UNITED STATES of America

v.

Keith D. LONG, Appellant.

UNITED STATES of America

v.

Sonia E. MAYFIELD, Appellant.

Nos. 89–3096, 89–3105.

United States Court of Appeals, District of Columbia Circuit.

Argued April 16, 1990.

Decided June 22, 1990.

Nicholas G. Karambelas with whom Steven R. Kiersh was on the brief, for appellant in 89–3096.

Ronny E. Jones, for appellant in 89–3105.

Eric M. Acker, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Helen M. Bollwerk, Elizabeth Trosman, and Geoffrey Bestor, Asst. U.S. Attys., were on the brief, for appellee.

Before SILBERMAN, SENTELLE, and THOMAS, Circuit Judges.

Opinion for the court filed by Circuit Judge THOMAS.

Concurring opinion filed by Circuit Judge SENTELLE.

CLARENCE THOMAS, Circuit Judge:

Sonia Mayfield and Keith Long appeal their convictions for possessing in excess of five grams of cocaine base with intent to distribute, 21 U.S.C. §§ 841(a), 841(b)(1)(B)(iii),[1] and using or carrying a

---

1. Both Mayfield and Long were charged with possessing in excess of fifty grams of cocaine base with intent to distribute, 21 U.S.C. § 841(b)(1)(A)(iii). The jury, however, convicted them of the lesser included offense of pos-

firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1). In addition, Mayfield appeals her conviction for knowingly opening or maintaining a place for the purpose of distributing or using a controlled substance, 21 U.S.C. § 856(a)(1). Mayfield's appeal is not properly before this court. Thus, we do not consider the merits of her arguments, and remand her case to the district court. Long raises three challenges to his convictions. First, he asserts that there is insufficient evidence to support his conviction for using or carrying a firearm in relation to a drug trafficking crime. Second, he contends that the trial judge erred in admitting into evidence the substance of an incriminating telephone conversation. Finally, he asserts that the trial judge abused his discretion by declining to sever Long's trial from Mayfield's. We are persuaded by Long's first argument and reverse his firearms conviction. Finding no merit in his second and third contentions, however, we affirm his narcotics conviction.

## I.

The Federal Rules of Appellate Procedure require that parties wishing to appeal in criminal cases file a notice "in the district court within 10 days after the entry of the judgment or order appealed from." Fed.R.App.P. 4(b). The district court docketed the judgment against Mayfield on June 5, 1989; she filed notice of this appeal on June 16, 1989, eleven days later. Citing rule 4(b), and stressing that it is "mandatory and jurisdictional," *United States v. Robinson*, 361 U.S. 220, 226, 80 S.Ct. 282, 287, 4 L.Ed.2d 259 (1960), the government urges us to dismiss Mayfield's appeal outright.

As Mayfield correctly notes, however, rule 4(b) does not absolutely bar criminal appeals in which the required notice is filed more than ten days after entry of the judgment. The rule allows the district court, with or without motion and notice, to extend the period for filing a notice of appeal for an additional thirty days "[u]pon a showing of excusable neglect."

Mayfield concedes that the district court did not *explicitly* grant her a thirty-day extension to file her notice of appeal. She urges us, however, to hold that the district court *implicitly* granted the extension by "accepting" her untimely notice of appeal. She notes that the Eighth Circuit has, on occasion, followed this approach. *See United States v. Williams*, 508 F.2d 410, 410 (8th Cir.1974) (per curiam) ("We construe the district court's acceptance of the notice of appeal as a grant of additional time to file pursuant to Fed.R.App.P. 4(b) even though no formal order is entered to that effect."); *United States v. Mills*, 430 F.2d 526, 528 (8th Cir.1970) (same), *cert. denied*, 400 U.S. 1023, 91 S.Ct. 589, 27 L.Ed.2d 636 (1971).

■ We decline Mayfield's invitation to equate the ministerial act of docketing a tardy notice of appeal with an implicit grant of an extension of time by the district court. Docketing a notice of appeal is a clerical task, and does not require the approbation of the trial judge. It thus presents no occasion for a party to make a showing of excusable neglect, which is a prerequisite for obtaining the thirty-day extension contemplated by rule 4(b). Adopting the fiction that the district court implicitly granted the extension of time would undoubtedly expedite the final adjudication of Mayfield's case. But the unambiguous language of the rule forecloses this shortcut.[2] The time limits specified in the rules

---

sessing in excess of five grams with intent to distribute.

**2.** There may be cases in which an implicit finding of excusable neglect would be less of a fiction than here. When a trial judge takes some explicit action with respect to a tardy appeal, the judge at a minimum is aware of the appeal; under these circumstances, his action could arguably be construed as an implicit finding of excusable neglect. *See, e.g., United States*

*v. Gibson*, 568 F.2d 111, 112 (8th Cir.1978) (per curiam) (concluding that trial judge implicitly found excusable neglect when he granted motion for leave to appeal in forma pauperis during thirty-day discretionary period). Because Mayfield has not specified any action taken by the district judge in her case that might constitute an implicit extension of time, we need not consider the merits of the *Gibson* approach.

serve vital interests of efficiency and finality in the administration of justice, and are not designed merely to ensnare hapless litigants. As this court has noted when considering a civil appeal time-barred by rule 4(a): "The Federal Rules of Appellate Procedure impose strict requirements for the timely filing of appeals.... [W]e decline to ... subvert the plain words and meaning of the federal rules. This court has never had the authority to revamp these rules." *Polylok Corp. v. Manning,* 793 F.2d 1318, 1322 (D.C.Cir.1986).[3]

■ We therefore remand this case to the district court for a determination of whether Mayfield should be granted the thirty-day extension permitted by rule 4(b). Mayfield will thus have an opportunity to present to the district court whatever evidence of excusable neglect she can muster. This resolution places us squarely in line with the majority of appellate courts that have considered this issue. *See, e.g., United States v. Golding,* 739 F.2d 183, 184 (5th Cir.1984) (per curiam); *United States v. Lucas,* 597 F.2d 243, 245–46 (10th Cir.1979) (per curiam); *United States v. Stolarz,* 547 F.2d 108, 111–12 (9th Cir.1976), *cert. denied,* 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977).[4] Even the Eighth Circuit has cut back significantly on its earlier, permissive attitude toward rule 4(b). *See United States v. Anna,* 843 F.2d 1146, 1147 (8th Cir.1988) (terming the Circuit's earlier practice "discretionary" and declining to follow it, instead remanding case to district court for decision on excusable neglect).

## II.

Consideration of Long's first claim, that his firearms conviction was not supported by sufficient evidence, requires some elaboration of the pertinent facts. On the evening of November 16, 1988, pursuant to a valid search warrant, several officers of the D.C. Metropolitan Police Department forced their way into a one-room basement apartment where Mayfield lived. They found Long emerging from behind a curtain that separated the back of the room from the front. Tr. I at 23–24, 25, 68; Tr. II at 8. The police arrested Long and three other individuals, including Mayfield,[5] and began a search for evidence of drug-related activity.

The search was hardly arduous; the one-room apartment brimmed with evidence. In the front part of the apartment, the police found rock cocaine, a razor blade, and a butane torch lying on a table. They found more rock cocaine and a scale on a table behind the curtain. The search also yielded a large amount of cash, cocaine in powder form, several pipes, a number of butane torches, packaging materials, and a significant supply of dextrose, a cutting agent. Finally, the police found a functional but unloaded .22 caliber revolver between the cushions of a sofa in the front part of the room. Although the barrel of the gun was hidden, the handle protruded from the cushions. The police found no other firearms or any ammunition in the apartment.

In addition to his narcotics conviction, Long was convicted of violating 18 U.S.C. § 924(c)(1). This statute, in pertinent part, provides that "[w]hoever, during and in relation to any ... drug trafficking crime

---

3. *But cf. United States v. Hoye,* 548 F.2d 1271, 1273 (6th Cir.1977) (per curiam) ("[W]here a document is filed within the 40-day period which represents a clear assertion of an intent to appeal, courts of appeals have the power to overlook irregularities where fairness and justice so require."). Having no idea of the source of this alleged "power to overlook" the clear language of rule 4(b), we reject the *Hoye* approach.

4. The Fourth Circuit, in one case, took a novel approach to this question. After noting the option of remanding an untimely appeal to the district court for a decision on excusable ne-

glect, the court concluded that "based on the facts present here the district court would find excusable neglect," and proceeded to consider the merits of the case. *See United States v. Reyes,* 759 F.2d 351, 354 (4th Cir.), *cert. denied,* 474 U.S. 857, 106 S.Ct. 164, 88 L.Ed.2d 136 (1985). Because Mayfield has proffered no excuse for her delay, the *Reyes* approach, even assuming that it can be squared with the language of rule 4(b), is not available to us here.

5. The other two individuals, indicted with Long and Mayfield, pleaded guilty to possession of a controlled substance, 21 U.S.C. § 844(a).

..., *uses or carries* a firearm, shall, in addition to the punishment provided for such crime ..., be sentenced to imprisonment for five years." *Id.* (emphasis added). Long argues that the evidence adduced at trial was insufficient to support a jury finding that he "use[d] or carrie[d]" a firearm within the meaning of section 924(c)(1). We agree.

■ Overturning a jury's determination of guilt on the ground of insufficient evidence is not a task that we undertake lightly. As an appellate court, we owe tremendous deference to a jury verdict; we must consider the evidence in the light most favorable to the government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and affirm the judgment if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We do not, however, fulfill our duty through rote incantation of these principles followed by summary affirmance. We must ensure that the evidence adduced at trial is sufficient to support a verdict as a matter of law. A jury is entitled to draw a vast range of reasonable inferences from evidence, but may not base a verdict on mere speculation.

■ Having carefully reviewed the record in this case, we conclude that the government failed to provide any evidence to support a reasonable inference that Long "used" the revolver.[6] When arrested, Long was ten to fifteen feet away from the revolver, and was emerging from behind the curtain that divided the room.

There is no evidence suggesting that Long was headed for the gun, or that he even knew of its existence. The gun itself was unregistered, and yielded no fingerprints. Nor did Long own, lease, or live at the premises on which the gun was found.[7] There was no evidence, in short, that the firearm was ever either actually or constructively in Long's possession. Although the gun was partially visible between the sofa cushions, its visibility, without more, does not establish that any particular person either actually or constructively possessed the gun.

■ The government argues that Long "used" the gun because he committed a drug offense facilitated by the gun. The logic, in essence, is this: Long was connected to the drugs; the distribution of the drugs was facilitated by the gun; since Long thus derived benefit from the gun, he "used" it. We reject the notion that a loose, transitive relationship of this type is sufficient to show that a person "used" a gun. This approach would obliterate any remaining limits on the meaning of the word "use" in section 924(c)(1).

■ The word has been losing its conventional, active connotation for some time, as courts have held that narcotics offenders can "use" guns simply by possessing them in the vicinity of drugs. Although a defendant can "use" a firearm without actively employing it, the government, at a minimum, must show that a particular defendant has actually or constructively possessed a particular firearm in order to

---

**6.** There is no evidence that Long ever actually or constructively "carried" the revolver, and hence we are not called upon to construe that word. Instead, we focus exclusively on the statutory term "use," which we believe is properly susceptible of a broader interpretation than "carry." *Cf. United States v. Feliz–Cordero,* 859 F.2d 250, 253–54 (2d Cir.1988) (legislative history of section 924(c)(1) does not suggest that "carry" should be construed as having any meaning beyond its literal meaning, and "[t]herefore, a person cannot be said to 'carry' a firearm without at least a showing that the gun is within reach during the commission of the drug offense").

**7.** Mayfield testified at trial that Long visited her apartment two to three times per week. Tr. II at 92. Long did not live there, however. Even assuming that he visited the apartment to carry out drug transactions, there was no evidence that he exercised the degree of dominion and control over the premises that would support an inference of constructive possession over their contents. This court has emphasized that constructive possession "should not be lightly imputed to one found in another's apartment or home." *United States v. Holland,* 445 F.2d 701, 703 (D.C.Cir.1971).

prove that he has "used" it.[8]  *Cf. United States v. Joseph,* 892 F.2d 118, 126 (D.C. Cir.1989) (violation of section 924(c)(1) possible "[w]hen a person 'has a present ability to exercise *dominion and control* over' a firearm") (emphasis added) (quoting *United States v. Evans,* 888 F.2d 891, 895 (D.C.Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990)); *United States v. Henry,* 878 F.2d 937, 944 (6th Cir.1989) (violation of section 924(c)(1) possible "if it reasonably appears that the firearms found on the premises controlled or owned by a defendant *and in his actual or constructive possession* are to be used to protect the drugs or otherwise facilitate a drug transaction") (emphasis added); *United States v. Meggett,* 875 F.2d 24, 29 (2d Cir.) (*"Possession of a gun,* even if it is concealed, constitutes 'use' if such possession is an integral part of the predicate offense and facilitates the commission of that offense.") (emphasis added), *cert. denied,* — U.S. —, 110 S.Ct. 166, 107 L.Ed.2d 123 (1989); *United States v. Matra,* 841 F.2d 837, 840–41 (8th Cir.1988) ("[N]one of the guns was in the actual possession of the defendant, but all were *under his control."*) (emphasis added); *United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985) (violation of section 924(c)(1) possible *"[i]f the firearm is within the possession or control* of a person who commits an underlying crime as defined by the statute") (emphasis added); *United States v. LaGuardia,* 774 F.2d 317, 321 (8th Cir.1985) ("Section 924(c)(1) reaches the *possession* of a firearm which in any manner facilitates the execution of a felony.") (emphasis added).  Upholding the conviction of a defendant in the absence of any indicia of possession would stretch the meaning of "use" beyond the breaking point.  We readily acknowledge that the word "use" is expansive, but the difficulty of pinpointing the outer limits of its meaning does not imply that no such limits exist.  To affirm Long's conviction for "using" the revolver in the sofa would be to concede that the word "use" has no discernible boundaries.  That prospect is particularly troubling where, as here, we are construing a criminal statute.

The government has cited numerous cases in which this court and its sister circuits have upheld the firearms convictions of defendants found to have "used" guns in a vast array of circumstances.  These cases are inapposite.  Our problem here is not with the notion that there are many ways in which a defendant can "use" a firearm in relation to a drug trafficking crime, but rather with the notion that in order to prove such "use," the government need not show any nexus at all between a particular drug offender and the firearm that he allegedly "used."  As noted above, the record in this case is devoid of *any* evidence linking Long to the revolver found in the sofa, other than his presence in the apartment and involvement with the narcotics.  In all the cases cited by the government, some nexus was established through an explicit or implicit showing of actual or constructive possession.

In *United States v. Anderson,* 881 F.2d 1128 (D.C.Cir.1989), for example, we upheld the firearms conviction of appellant Green-

---

**8.**  This analysis assumes a situation in which the government prosecutes a defendant for violating the statute as a principal.  A defendant who has not actually or constructively possessed a firearm, of course, might nevertheless be punished as a principal if the government can prove that he has conspired in or aided or abetted a section 924(c)(1) offense.

Thus, a defendant involved in a conspiracy, regardless of whether he has possessed a firearm, can be punished as a principal based on the rule of vicarious liability for coconspirators.  *See United States v. Rosado,* 866 F.2d 967, 968 n. 1, 970 (7th Cir.) (defendant liable under section 924(c)(1) where coconspirator used firearm during drug trafficking offense), *cert. denied,* —

U.S. —, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *see also Pinkerton v. United States,* 328 U.S. 640, 646–48, 66 S.Ct. 1180, 1183–85, 90 L.Ed. 1489 (1946) (coconspirator liable for all foreseeable substantive offenses committed in furtherance of the conspiracy).

Similarly, where the government proves that a defendant has aided or abetted another person's "use" of a firearm, the defendant may be punished as a principal regardless of whether the defendant himself has actually or constructively possessed the firearm.  18 U.S.C. § 2.

In this case, the government has not proved a conspiracy or aiding or abetting.  Long's potential liability for using the gun is based entirely on his own actions.

wood, who was arrested inside the closet of a room adjoining a second room where guns were found. Our holding, however, was premised on our conclusion that "there was substantial evidence connecting Greenwood to the bedroom in which the guns were found." *Id.* at 1141. Of paramount importance, the government had introduced evidence that Greenwood lived in the apartment; this evidence justified an inference that Greenwood constructively possessed the apartment's contents. In addition, there was testimony that Greenwood had the keys to the particular bedroom in which the guns were found, and that the police found Greenwood's wallet and photographs in that bedroom. *See id.* at 1141. *Anderson,* thus, stands for the unexceptional proposition that a jury can reasonably infer that a person who exercises dominion and control over given premises constructively possesses contraband found on those premises. *See also United States v. Alvarado,* 882 F.2d 645, 654 (2d Cir.1989) (affirming section 924(c)(1) conviction where guns were found in defendant's residence), *cert. denied,* —— U.S. ——, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *United States v. Robinson,* 857 F.2d 1006, 1010 (5th Cir.1988) (same); *United States v. Matra,* 841 F.2d 837, 840–41 (8th Cir.1988) (same).

Similarly, we have held that evidence regarding a past connection between a defendant and a firearm establishes a sufficient nexus to support a conviction under section 924(c)(1). In *United States v. Evans,* 888 F.2d 891 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1325, 108 L.Ed.2d 500 (1990), we upheld the firearms conviction of a drug trafficker arrested across town from the apartment where the relevant guns were found.[9] In that case, however, the government introduced testimony that the defendant had brought the guns and drugs to Washington from New York and had kept them overnight in an apartment, "within reach and available to protect him during his *ongoing* crime of possession with intent to distribute cocaine." *Id.* at 895 (emphasis added). This evidence allowed the jury to infer constructive possession: "An object is 'accessible' or 'within reach,' as commonly understood, if a party is not just near it, but has a present ability to exercise dominion and control over it.... [T]here was sufficient evidence from which the jury could conclude that [the appellant] had something approaching actual possession of the gun during the commission of the predicate drug offense." *Id.* at 895.

Other courts have upheld section 924(c)(1) convictions where the nexus was established in a variety of ways. *See, e.g., United States v. Munoz–Fabela,* 896 F.2d 908, 911 (5th Cir.1990) (firearm, registered in another person's name, was on floorboard of defendant's car, within view and reach of defendant); *United States v. Grant,* 545 F.2d 1309, 1311–12 (2d Cir.1976) (firearms were found in rooms of social club; defendant lived there, managed the club, and had keys to the rooms), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977). A common theme unites these cases and distinguishes them from the present one. In each case, the defendant's actual or constructive possession of a firearm was indicated by one or more of several factors: close physical proximity to the firearm, possessory interest in the firearm, or dominion and control over the premises on which the firearm was located.

Lest this opinion foster confusion in an already unsettled area, we emphasize its narrowness: we reverse Long's conviction because the government failed to adduce *any* evidence suggesting that Long actually or constructively possessed the revolver.[10] We simply cannot accept the proposi-

---

**9.** Although *Evans* construed the "carry" component of the "use[ ] or carr[y]" requirement, its analysis applies equally to the term "use."

**10.** We do not mean to imply that possession of a firearm by a drug trafficker is invariably *sufficient* for a conviction under section 924(c)(1). The statute requires that the defendant (1) use

the firearm (2) during and in relation to a drug trafficking crime. A person can possess a gun without either "using" it or using it "during and in relation to" a given crime. *See, e.g., United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988) (firearm found in dresser drawer was not accessible to drug traffickers and thus was

tion that an individual can be convicted for "using" a gun that he neither actually nor constructively possessed. Evidence of possession, or evidence from which possession can reasonably be inferred, is a prerequisite to a conviction for "use" under section 924(c)(1).

We decline to decide the case so narrowly, however, as to reveal no principle applicable beyond these facts. The concurrence argues that we should hold only that "[o]n the present facts, the government did not offer evidence of possession or any other evidence that Long had *used* the firearm." Conc. op. at 1582 (emphasis modified). This analysis, however, begs the central question in the case: was there sufficient evidence to show that Long "used" the gun? The government obviously thought there was. It argued strenuously in this appeal that Long's connection to the drugs and his presence in the room with the gun amounted to "use" of the gun. Deciding whether there was sufficient evidence to support Long's conviction for "using" a gun necessarily entails some decision about what it means to "use" a gun. Despite the concurrence's qualms about setting a minimum threshold for finding "use" within the meaning of section 924(c)(1), this case forces us to set such a threshold, either explicitly (as we have done) or implicitly.

### III.

Having reversed Keith Long's conviction on the firearms charge, we now consider his two remaining challenges, which pertain to the narcotics charge.

■ During the search of Mayfield's apartment, the telephone rang, and a police officer answered it. An unidentified female voice asked to speak with "Keith." The officer replied that Keith was busy. The caller then asked if Keith "still had any stuff." The officer asked the caller what she meant, and the caller responded "a fifty." [11] The officer said "yeah." The caller then asked whether "Mike" could come around to pick up the "fifty." Again, the officer answered yes. Tr. I at 80–81.

Before trial, Long's counsel moved in limine to exclude evidence of this telephone conversation as inadmissible hearsay. The trial judge denied the motion. *See* Transcript of Suppression Hearing (Tr. Supp. Hrg.) at 11. At trial, the police officer who had taken the call testified about the conversation. Tr. I at 80–81. In this appeal, Long renews his hearsay challenge to the introduction of the officer's testimony.

Although Long concedes that the caller did not expressly assert that he was involved in drug distribution, he argues that her questions contain *implicit* assertions about his involvement. Long contends that it is irrelevant that these alleged assertions were couched in question form, since the questions plainly revealed assumptions that are the functional equivalent of direct assertions. Long maintains that the caller, through her questions, in effect asserted that "Keith has crack and sells it out of Mayfield's apartment." He argues that the government introduced this testimony to prove the truth of precisely these assertions, and that the testimony, thus, should have been excluded as hearsay.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. Fed.R.Evid. 801(c). As a threshold matter, then, Long must show that the evidence he seeks to exclude as hearsay is a "statement," which the rule defines as "an oral or written assertion." Fed.R.Evid. 801(a)(1). Although the rule does not define "assertion," the accompanying advisory committee note stresses that "nothing is an assertion unless *intended* to be one." Fed.R. Evid. 801 advisory committee note (emphasis added).

The caller's words, thus, cannot be characterized as an "assertion," even an implied one, unless the caller intended to make such an assertion.[12] While Long's criticism

not used during or in relation to drug trafficking offense).

11. A "fifty" refers to a bag of crack worth fifty dollars. *See* Tr. I at 90; Tr. II at 50, 56.

12. The advisory committee note's discussion of the intent requirement focuses on situations in which an implied assertion arises from conduct, as opposed to words. The note appears to as-

of a rigid dichotomy between express and implied assertions is not without merit, it misses the point that the crucial distinction under rule 801 is between intentional and unintentional messages, regardless of whether they are express or implied. It is difficult to imagine any question, or for that matter any act, that does not in some way convey an implicit message. One of the principal goals of the hearsay rule is to exclude declarations when their veracity cannot be tested through cross-examination. When a declarant does not intend to communicate anything, however, his sincerity is not in question and the need for cross-examination is sharply diminished. Thus, an unintentional message is presumptively more reliable. *See United States v. Groce*, 682 F.2d 1359, 1364 (11th Cir.1982); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(a)[01] (1988). Evidence of unintended implicit assertions is "[a]dmittedly ... untested with respect to the perception, memory, and narration (or their equivalents) of the actor," but "these dangers are minimal in the absence of an intent to assert and do not justify the loss of the evidence on hearsay grounds." Fed.R.Evid. 801 advisory committee note.

■■■ With our inquiry focused on the *intent* of the caller, we have little trouble disposing of Long's theory about implied assertions. Long has not provided any evidence to suggest that the caller, through her questions, intended to assert that he was involved in drug dealing. The caller may indeed have conveyed messages about Long through her questions, but any such messages were merely incidental and not intentional. *See United States v. Zenni*, 492 F.Supp. 464, 469 (E.D.Ky.1980) (phone calls from bettors, answered by police during raid of illegal gambling establishment, were not assertions and therefore were outside scope of hearsay rule). Long thus fails to satisfy the intent component of rule 801, which "place[s] the burden upon the party claiming that the intention existed." Fed.R.Evid. 801 advisory committee note; *accord United States v. Hensel*, 699 F.2d 18, 31 (1st Cir.), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983). Because the caller's questions were nonassertive, they fall outside the scope of the hearsay rule, and the trial judge did not err in admitting the testimony concerning the questions.[13]

## IV.

Long and Mayfield were tried jointly. Asserting that the evidence against Mayfield was far more damning than that against him, Long argues that the district court abused its discretion in denying his motion to sever his trial from hers.[14] We find no merit in this claim.

sume, in circular terms, that any communication made in words is an assertion: "It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion. Hence verbal assertions readily fall into the category of 'statement.'" Fed.R.Evid. 801 advisory committee note. The note also acknowledges the possibility of "nonassertive verbal conduct," however, and suggests that intent determines whether such "verbal conduct" is hearsay. We are persuaded that the note's intent analysis applies with equal force to messages implied from words and to messages implied from conduct.

13. Long further argues that, even if testimony about the telephone call is not hearsay, it should have been excluded as unfairly prejudicial. Rule 403, in pertinent part, provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair* prejudice." Fed.R.Evid. 403 (emphasis added).

Long argues that the officer's testimony regarding the phone call was unreliable because she testified from memory, and because the declarant was unavailable for cross-examination. But this is invariably true whenever a witness testifies about words spoken outside the courtroom; Long has not explained why the prejudice inherent in this testimony is *unfair*. In no way has Long shown the "grave abuse" of discretion that is required before we will disturb the delicate balance struck by the trial court under rule 403. *See United States v. Payne*, 805 F.2d 1062, 1066 (D.C.Cir.1986).

14. The government contends that Long did not present this argument to the district court, and that consequently he has waived it on appeal. The record, however, shows otherwise. In advance of trial, Long filed a motion to sever his trial from that of his (then three) codefendants, on the ground that the evidence against him was much weaker than the evidence against them. The government opposed this motion, and both sides filed briefs. When one of the codefendants pleaded guilty, Long's attorney conceded that the severance motion had become moot

■ The judicial system has a strong and legitimate interest in efficient and expeditious proceedings, and hence the system favors the joint trial of codefendants. *See United States v. Manner*, 887 F.2d 317, 324 (D.C.Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990); *United States v. Hines*, 455 F.2d 1317, 1334 (D.C.Cir.1971), *cert. denied*, 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972). Of course, this interest must never be allowed to eclipse a defendant's right to a fair trial. A joint trial is inappropriate "when the evidence against one defendant is 'far more damaging' than the evidence against the moving party." *United States v. Bruner*, 657 F.2d 1278, 1290 (D.C.Cir.1981) (quoting *United States v. Mardian*, 546 F.2d 973, 977 (D.C.Cir. 1976) (en banc)); *see also United States v. Slade*, 627 F.2d 293, 309–10 (D.C.Cir.), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). In such situations, the jury may not be able to compartmentalize the evidence introduced against each defendant, and the spillover may jeopardize one defendant's right to a fair trial. *See United States v. Sampol*, 636 F.2d 621, 647 (D.C.Cir.1980) (per curiam); *Mardian*, 546 F.2d at 979.

■ Striking the balance between the system's interest in joint trials and a defendant's right to a fair proceeding is peculiarly within the province of the trial court, and we will not reverse the balance that court strikes absent a clear abuse of discretion. *United States v. Hernandez*, 780 F.2d 113, 119 (D.C.Cir.1986); *United States v. Haldeman*, 559 F.2d 31, 72 (D.C.Cir. 1976) (en banc) (per curiam), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). In this case, to be sure, there was no dearth of evidence against Mayfield. She lived in the apartment where the drugs were found, which at a minimum suggests some connection to the drugs and the firearm discovered there. There was, however, abundant evidence implicating Long as well: when arrested, he was surrounded by narcotics and related paraphernalia. This case involves nowhere near the "gross disparity" of evidence required before we will hold that a district court has abused its discretion in denying a motion to sever. *Haldeman*, 559 F.2d at 72.

\*   \*   \*   \*   \*   \*

For the foregoing reasons, we remand Sonia Mayfield's case to the district court to determine whether her tardiness in filing a notice of appeal resulted from excusable neglect and, if so, whether to accept her notice of appeal, which was filed within the thirty-day discretionary period. We reverse Keith Long's conviction for using or carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1), but affirm his conviction for possessing in excess of five grams of cocaine base with intent to distribute, 21 U.S.C. §§ 841(a), 841(b)(1)(B)(iii).

*It is so ordered.*

SENTELLE, Circuit Judge, concurring:

While I am in total agreement with the conclusion of the Court and in substantial agreement with the reasoning of Judge Thomas' careful opinion, I write separately, if briefly, for a distinct, finite purpose. I find the opinion entirely correct as to the facts of this case and the law applied thereto. But, by stating that in the general case charging "use" of a firearm in violation of Title 18 U.S.C. § 924(c)(1), "the government, at a minimum, must show that a

---

with respect to that codefendant, but noted that he "would just like to preserve [the motion] in the event that disparity issues present themselves at trial with respect to the remaining defendants." Tr. Supp. Hrg. at 5. Long thus complied with Fed.R.Crim.P. 12(b)(5), which requires that severance motions be raised before trial.

At the close of all the evidence at trial, Long's attorney renewed his call for a severance, arguing that the disparity between the evidence against Long and the evidence against Mayfield was overwhelming. *See* Tr. II at 114–15 ("[H]ad there been a separate trial, none of this evidence with respect to Mr. Long on trial would have come in against him.... It's a spillover; the prejudice is overwhelming; coupled with the fact that this would not have come in had there been a separate trial."). The court denied Long's severance motion. *Id.* at 116. It is disingenuous, at best, for the government now to contend that Long "did not argue this ground to the District Court." Brief for Appellee at 26.

particular defendant has actually or constructively possessed a particular firearm in order to prove that he has 'used' it." Maj. op. at 8, the Court has gone beyond the holding necessary to determine this case. On the present facts, the government did not offer evidence of possession *or any other evidence* that Long had used the firearm, as the Court's opinion well establishes. That, however, is all that is necessary to decide the controversy before us. There may be other cases in which evidence sufficient to support a jury verdict of "use" would appear without fitting the technical rubric of possession. The majority's opinion at footnote 8 points out the acting in concert possibilities, and there may be other ways in which a defendant engaged in a drug transaction can "use" a firearm possessed by some other person to protect the defendant's own drug enterprise. What the quantum of evidence necessary for such other concept of use might be, I would leave for the case that presents the question.