925 F.2d 490
 288 U.S.App.D.C. 259
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Gidannal WAUL.
 No. 90-3139.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 1, 1991.
 
 Appeal from the United States District Court for the District of Columbia, No. CR-88-00285-01.
 D.D.C.
 AFFIRMED.
 Before BUCKLEY, STEPHEN F. WILLIAMS and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This case occasions no need for a published opinion. See D.C.Cir.Rule 14(c). It is
 
 
 2
 ORDERED and ADJUDGED that the decision of the district court is affirmed for the reasons set forth in the attached memorandum.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Appellant was convicted on four counts: possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a), (b)(1)(C); possession with intent to distribute marijuana in violation of 21 U.S.C. Sec. 841(a), (b)(1)(D); use of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. Sec. 924(c); and maintaining premises in connection with narcotics offenses in violation of 21 U.S.C. Sec. 856. We affirm on all counts.
 
 
 5
 On August 20, 1987, District of Columbia police officers raided 1508 18th St., S.E., Apt. 3, after obtaining a warrant to search the premises. Upon their arrival, they found appellant coming out of the apartment with Leslie Brown, Richard Dreckett, and Ian Harris. [Tr. 60, 69.] Appellant told one of the officers that he lived in the apartment. [Tr. 64, 66.] Inside, the officers discovered (along with various drug paraphernalia) twenty pounds of marijuana, 30.8 grams of cocaine hydrochloride, and, three inches away, a semiautomatic weapon. [See Tr. 43, 86, 107-10.]
 
 
 6
 At appellant's trial, Dreckett testified that he, appellant, and Harris used the apartment to conduct drug distribution activities [Tr. 141-45], that along with Harris they "combined" to pay the rent in the form of drugs that "belonged to all three of us" [Tr. 146], and that appellant had occasionally handled the gun [Tr. 148], which lay in the apartment "[i]n case of any trouble, if we had a robbery." [Tr. 144.] The government also introduced expert testimony to the effect that (1) guns play an important role in drug distribution operations [Tr. 133] and (2) the volume of the drugs found in the apartment and the nature of the drug paraphernalia both suggested an intent to distribute the drugs. [J.A. 124-32.]
 
 
 7
 Appellant first argues that the evidence was insufficient to convict him on any of the counts. Yet we cannot reverse a criminal conviction on sufficiency grounds unless "the evidence is such that a reasonable mind could not find guilt beyond a reasonable doubt." United States v. Castellanos, 731 F.2d 979, 984 (D.C.Cir.1984); see also Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). That is not the case here. The evidence noted above could convince any reasonable jury that appellant participated in a scheme to distribute marijuana and cocaine. The government also presented sufficient evidence of appellant's guilt under 18 U.S.C. Sec. 924(c)(1) by (1) establishing the gun's proximity to the drugs, (2) eliciting Dreckett's testimony that appellant sometimes handled the gun and that Waul and the others kept the gun around to defend the drug stash, and (3) presenting expert testimony on the centrality of firearms in drug operations. See generally United States v. Anderson, 881 F.2d 1128, 1140-41 (D.C.Cir.1989); cf. United States v. Long, 905 F.2d 1572, 1578 (D.C.Cir.1990). Finally, appellant's own statement that he lived at the apartment, along with Dreckett's testimony that appellant helped pay the rent, sufficed to convince a reasonable jury of his guilt under 21 U.S.C. Sec. 856.
 
 
 8
 Appellant also argues that he was unfairly prejudiced by the prosecutor's insinuation, during closing argument, that Dreckett was a credible witness despite his plea agreement with the government to testify at appellant's trial. [see Tr. 255-56] This argument does not merit reversal. First, appellant's lawyer did not object to the prosecutor's statement at trial, so we cannot reverse absent a showing of plain error. See United States v. Young, 470 U.S. 1, 14 (1985). The statement is harmless error--if, in fact, it is error at all. It was suggestive rather than conclusory, and it came in understandable response to appellant's direct assault on Dreckett's credibility.
 
 
 9
 Granted, the prosecutor did assert that, in exchange for his testimony, Dreckett received "not a second off of his time in jail." [Tr. 256] Taken out of context this statement seems misleading, since Dreckett's plea agreement did include his promise to testify at Waul's trial. But just a few sentences earlier the prosecutor acknowledged that very fact, confining the possible meaning of his later remark to the presumably accurate proposition that Dreckett's sentence would not be further reduced if his courtroom testimony actually incriminated Waul (or raised if it failed to do so). At worst, the prosecutor asked the jury to consider "what would have happened if [Dreckett] had gotten up there and just said I don't know" about appellant's guilt [Tr. 256]--hardly a personal voucher of credibility. These factors--together with the trial court's jury instruction counseling caution when considering an accomplice's testimony [Tr. 268]--render any error harmless.
 
 
 10
 Appellant also argues that his indictment should have been dismissed because it did not issue until about eleven months after his arrest. During that time, appellant contends, Harris died and took potentially exculpatory testimony to his grave. Appellant argues that the government's delay violates both the Fifth and Sixth Amendment. Yet it could not have violated the Sixth Amendment: the government dropped the initial charges against appellant almost immediately after his arrest, [Red at 3; Blue at 1] and thus, for the purposes of the speedy trial clause, appellant was "in the same position as any other subject of a criminal investigation." United States v. MacDonald, 456 U.S. 1, 8-9 (1982); see also United States v. Loud Hawk, 474 U.S. 302, 310-12 (1986); United States v. Bittle, 699 F.2d 1201, 1205 (D.C.Cir.1983). And the delay did not violate the Fifth Amendment: appellant failed to prove either that the government was responsible for Harris's death or that Harris alone could have produced specific exculpatory evidence. See United States v. Gouveia, 467 U.S. 180, 192 (1984).
 
 
 11
 For these reasons we affirm.