**UNITED STATES of America**

v.

**Carmelita JOHNSON, Tyrone E. Brawner.**

**Crim. Nos. 91–131–01 (CRR), 91–131–03 (CRR).**

United States District Court, District of Columbia.

July 9, 1991.

Robert Meyer, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Washington, D.C., was on brief, for the Government.

Robert E. Morin of Fisher, Morin & Kagan–Kans, P.C., Washington, D.C., for Carmelita Johnson.

Enid Hinkes, Kensington, Md., for Tyrone Brawner.

## OPINION

CHARLES R. RICHEY, District Judge.

### I. INTRODUCTION.

On June 4, 1991, Carmelita Johnson was convicted of possession with intent to distribute 5 or more grams of cocaine base and of knowingly, intentionally and unlawfully making available for use a building for the purpose of storing, distributing or using a controlled substance. Co-defendant Tyrone Brawner, who has been convicted of a drug offense before this Court in recent months, was convicted of possession with intent to distribute cocaine base; using or carrying a firearm during the course of a drug trafficking offense; and unlawful possession of a firearm in interstate commerce by a felon. Both defendants renew their respective motions for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, and also move for a new trial pursuant to Federal Rule of Criminal Procedure 33. Upon consideration of the Defendants' Motions, the Government's response thereto, the applicable law and the record herein, the Court denies the Defendants' Motions.

### II. BACKGROUND.

As part of an undercover operation, the Washington Metropolitan Police purchased drugs at a residence located at 73 "O" Street in the District of Columbia on February 15, 1991. Later on that same evening, at approximately 11:30 p.m., the police executed a search warrant at this address. Upon entering the house, the police found Ms. Carmelita Johnson lying face-down on the kitchen floor. Also on the kitchen floor was Mr. Terry Hooks.[1] Mr. Tyrone Brawner was found in an upstairs bedroom with his infant son.[2] Police detained a fourth individual leaving the house, but this person was not arrested.

Although there is some discrepancy in the parties' versions of the testimony given at trial, most of the critical facts are undisputed. There is no dispute that Ms. Johnson leased the premises at 73 "O" Street, and that it was her primary place of residence.[3] There is also no dispute that the police recovered a small sack containing

---

1. Terry Hooks was charged with possession with intent to distribute 5 or more grams of cocaine base and with using or carrying a firearm in relation to a drug trafficking offense. The jury acquitted Hooks on both counts.

2. According to Mr. Brawner, he was wearing a t-shirt when the police arrived. The Government claims that Mr. Brawner was sitting in the upstairs bedroom without a shirt.

3. The police recovered papers from the house indicating that Ms. Johnson leased the house from the District of Columbia Housing Authority. Police also found Ms. Johnson's personal papers and identification in one of the upstairs bedrooms.

a .9mm Smith & Wesson pistol and a black leather pouch containing over 12 grams of crack cocaine from the two closets in the upstairs bedroom in which Mr. Brawner was found at the time of the arrest. Further, the parties agree that the police found numerous items of drug paraphernalia, such as new and used crack pipes and ziplock bags[4], strewn throughout the house. A razor blade and plate were found on top of the kitchen refrigerator. Police officers at the scene observed Mr. Brawner looking out of both the front and rear upstairs windows immediately prior to the time when police entered the premises.

Detective David Stroud, whom the Court qualified as an "expert" for purposes of giving testimony about drug trafficking, testified for the Government. Detective Stroud explained the uses of the various drug paraphernalia to the jury and also explained that drug dealers often prey upon weak people with drug habits, especially women, in order to obtain the use of their homes in exchange for money or drugs. According to another government witness, a person who was detained at the house on the night of the arrest told the police that he came to the house with Mr. Hooks to obtain a gun from Mr. Brawner.

Ms. Johnson renews her motion for judgment of acquittal, arguing that the evidence was insufficient to support the jury's verdict. She also asserts that the indictment was fatally flawed because it does not allege that she "managed or controlled" the premises which she was leasing. Finally, Ms. Johnson seeks a new trial because the Court's failure to strike a statement made by Detective Stroud about the tendency of drug dealers to prey upon weak addicts, especially women, prejudiced her and was offered without any basis in the evidence.

Mr. Brawner reasserts his motion for judgment of acquittal on the basis that the evidence is insufficient to show actual or constructive possession of either the gun or the drugs. Mr. Brawner also requests a new trial because the hearsay testimony given by a government witness, *i.e.*, that

one of the detainees went to the house with Mr. Hooks to borrow Mr. Brawner's alleged gun, was unduly prejudicial and should have led to a mistrial.

### III. THE MOTIONS FOR JUDGMENT OF ACQUITTAL MUST BE DENIED AS THERE WAS SUFFICIENT EVIDENCE UPON WHICH THE JURY COULD HAVE FOUND THESE DEFENDANTS RESPONSIBLE FOR THE CRIMES CHARGED.

The Court must deny a motion for judgment of acquittal when, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Poston*, 902 F.2d 90, 94 (D.C.Cir. 1990) (emphasis in original) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Courts accord great deference to juries and allow the jury's determination to stand even when the court may have reached a different conclusion. "When a reasonable mind might fairly have a reasonable doubt of guilt or might fairly have none, the decision is for the jury to make." *United States v. Herron*, 567 F.2d 510, 514 (D.C.Cir.1977); *see also United States v. Harrison*, 931 F.2d 65, 71 (D.C.Cir.1991) ("We do not determine whether we would find guilt beyond a reasonable doubt, but only whether a reasonable jury could find guilt beyond a reasonable doubt"). This standard recognizes that courts give "full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *United States v. Reese*, 561 F.2d 894, 898 (D.C.Cir. 1977); *see also United States v. Sutton*, 801 F.2d 1346, 1358 (D.C.Cir.1986). Because the jury is entitled to draw reasonable inferences from the evidence presented, "there is no requirement of direct evidence against the defendant; the evidence may be entirely circumstantial." *Poston, supra,* 902 F.2d at 94, n. 4; *see also United States v. Simmons*, 663 F.2d 107, 108 (D.C.Cir.1979). In short, courts review a

---

4. When tested, many of these bags and pipes betrayed small traces of cocaine.

jury's determination "very deferentially." *Harrison, supra*, 931 F.2d at 71.

Ms. Johnson and Mr. Brawner renew their motions for judgment of acquittal. Both contend that the evidence adduced at trial does not support the verdicts rendered against them. Specifically, Ms. Johnson argues that the mere "ownership"[5] of the house cannot constitute an adequate basis for inferring that she had actual or constructive possession of the drugs, nor does it prove that she had any knowledge of the activities taking place within the premises when she was not present. Mr. Brawner claims that there was insufficient evidence to support the jury's finding that he had either actual or constructive possession of the drugs or the gun. The Court considers each of the Defendants' claims in turn.

## A. THERE WAS SUFFICIENT EVIDENCE TO SUPPORT MS. JOHNSON'S CONVICTIONS.

■ The jury convicted Ms. Johnson of possession with intent to distribute 5 or more grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and with knowingly and intentionally making available for use a building for the purpose of distributing, storing or using a controlled substance in violation of 21 U.S.C. § 856(a). Upon careful review of the evidence and testimony adduced at trial, the Court finds that both of these charges are supported by the evidence.

Ms. Johnson argues that the Government did not prove that she had knowledge of the drugs, as the drugs were hidden in the bedroom closet. Ms. Johnson also argues that her mere presence in the house at the time of arrest cannot suffice to prove that she had any inkling of the drug activities taking place therein. However, the case of

*United States v. Jenkins*, 928 F.2d 1175, 1179 (D.C.Cir.1991), addresses the very issues that Ms. Johnson raises in this case.

Although the defendant in *Jenkins* argued that she was outside of the home on most days and that the drugs were hidden from her, the Court of Appeals upheld the conviction on the crack house charge under 21 U.S.C. § 856(a). The Court of Appeals agreed with the jury's conclusion that the "[n]atural inference is that those who live in a house know what is going on inside, particularly in the common areas." *Id.* at 1179. Moreover, given the expert testimony that drug dealers typically hide their drugs, the jury was "entitled to believe that the drugs were not concealed to keep Jenkins in the dark." *Id.* Even apart from whether drug dealers hide their stash, however, the presence of a computerized scale on the kitchen counter and cocaine pieces on the cutting board were sufficient bases for the jury to infer that the defendant in *Jenkins* had knowledge of the drug activity taking place. *Id.*

■ Based upon the evidence in this case, the jury was entitled to find that Ms. Johnson had knowledge of the drug activity taking place at 73 "O" Street. Although Ms. Johnson allegedly was visiting with her mother at the time the undercover drug sales were consummated, she did live in the house on a regular basis and, as in *Jenkins*, this is a sufficient basis upon which to infer knowledge. Moreover, as the *Jenkins* case demonstrates, the fact that the drugs at issue were concealed in the bedroom is immaterial. Based on the expert testimony in the case, the jury was free to believe that Ms. Johnson knew that these drugs were concealed in her house. Moreover, as the lessee and as one of the people who lived on the premises,[6] the jury may

---

**5.** The Court uses the term "ownership" loosely because Ms. Johnson was a lessee. Based upon the representations of the parties, the District of Columbia is technically the owner of these premises.

**6.** Ms. Johnson's claim that the indictment was fatally flawed because it did not allege that she "managed or controlled" the premises is frivolous. Section 856(a) makes it unlawful to "manage or control any building, room or en-

closure, either as owner, lessee, agent, employee, or mortgagee...." This plain language makes clear that "lessee" status is one of a number of indicia sufficient to show the person's ability to manage or control the house. *See Pennsylvania Dept. of Pub. Welfare v. Davenport*, — U.S. —, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) (it is a "fundamental canon that statutory interpretation begins with the language of the statute itself"). Taking Johnson's

conclude that Ms. Johnson knew what was going on inside, especially when there was evidence of drug use in plain view.

■ The jury also had an adequate factual predicate upon which to convict Ms. Johnson of possession with intent to distribute 5 or more grams of crack cocaine. In *Jenkins, supra,* the Court upheld the conviction on possession with intent to distribute based on facts very similar to the instant case. Because Ms. Johnson does not dispute that the quantity of drugs recovered indicates an intent to distribute, Ms. Johnson's status as the lessee alone is a sufficient basis upon which to find Ms. Johnson guilty of possession with intent to distribute. *See Jenkins, supra. See also United States v. Long,* 905 F.2d 1572, 1578 (D.C.Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 365, 112 L.Ed.2d 328 (1991) ("a jury can reasonably infer that a person who exercises dominion and control over a given premises constructively possesses contraband found on those premises") (citing *United States v. Anderson,* 881 F.2d 1128 (D.C.Cir.1989)).

■ At the very least, by making her house available to others who possessed drugs, the jury could find Ms. Johnson guilty of aiding and abetting the possession with intent to distribute cocaine base. In order to show that Ms. Johnson aided and abetted the possession with intent to distribute, the Government had to demonstrate that someone possessed the drugs with the intent to distribute; that Ms. Johnson had the specific intent to facilitate the commission of this crime; and that she assisted or participated in the crime having some knowledge of criminal acts taking place. *See United States v. Raper,* 676 F.2d 841, 849 (D.C.Cir.1982).

There is sufficient evidence upon which a jury could conclude that someone in the house possessed cocaine base with the intent to distribute it. The police recovered over 12 grams of crack on the premises. An expert testified that this amount of drugs, along with the baggies and other packaging materials found inside of the house, evidenced that drugs were being distributed by someone on the premises. Given that Ms. Johnson leased the house and lived there, and given the presence of drug paraphernalia throughout the domicile, the jury could find that Ms. Johnson had knowledge that drug activity was taking place. Finally, the jury could conclude that, as the person who was the lessee, she invited, or at least allowed, this person or persons to use her home for the purpose of distributing drugs.[7] Accordingly, by enabling someone to use her home for the purpose of storing or distributing drugs, Ms. Johnson aided and abetted the crime. *See Poston, supra,* 902 F.2d at 94 (sustaining conviction for one who "aided and abetted the *retention* of possession") (emphasis in original).

### B. THERE WAS SUFFICIENT EVIDENCE UPON WHICH THE JURY COULD HAVE CONVICTED MR. BRAWNER.

■ The jury convicted Mr. Brawner of possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); using or carrying a firearm in the course of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); and possession of a firearm in interstate commerce by a felon in violation of 18 U.S.C. § 922(g). Upon careful review of the evidence and the testimony adduced at trial, the Court finds that there was sufficient evidence to support each of these charges.

Mr. Brawner attacks all three counts on the basis that there was no evidence that he possessed either the guns or the drugs. *See Brawner's Points and Authorities in*

---

arguments at face value would make it nearly impossible to prove that one "controls" or "manages" the premises. Finally, living in the premises is sufficient to show one has dominion and control over it. *See United States v. Long,* 905 F.2d 1572, 1578 (D.C.Cir.1990) *cert. denied,* —— U.S. ——, 111 S.Ct. 365, 112 L.Ed.2d 328 (1991).

7. Ms. Johnson does not contest that fact that she knew that Brawner, Hooks and others were in the house, nor could she, as she was present at the time of the arrest when all of these individuals were apprehended.

*Support of Motion for Judgment of Acquittal* at 3 ("The judgment of acquittal should be granted as the government has not established any nexus between defendant Brawner and either the gun or the drugs"). He points to the fact that he is not the lessee, that none of his clothes were found on the premises, and that no identification of his was discovered there. According to Mr. Brawner, he was visiting his son, and just happened to be at the wrong place at the wrong time. Although the case against Mr. Brawner is far from compelling, the evidence against him is sufficient for the Court to find that the jury did not base its verdict on mere speculation.

In order for the Court to sustain the jury's verdict, there must be sufficient proof that Mr. Brawner had actual or constructive possession of the drugs and the gun. It is undisputed that Mr. Brawner did not have actual possession, as the gun and drugs were concealed in two different closets at the time of the arrest. Thus, the Government's case against Mr. Brawner rests on the theory of constructive possession. In order for the Government to meet its evidentiary burden on the element of constructive possession,

> there must be something more than mere presence at the scene of the criminal transaction. There must be some action, some word, or some conduct that links the individual to the narcotics and indicates that he had some stake in them, some power over them.

*United States v. Pardo,* 636 F.2d 535, 549 (D.C.Cir.1980) (citing *United States v. Staten,* 581 F.2d 878, 884 (D.C.Cir.1978)). *See also Long, supra* (reversing firearms conviction because there was "no evidence suggesting that Long was headed for the gun, or even that he knew of its existence"). Thus, the Court must determine whether the jury could have reasonably concluded that Mr. Brawner's conduct indicates that he had some power over or stake in the drugs and the gun at issue.

The evidence shows that the police found Mr. Brawner in the upstairs bedroom where both the drugs and the gun were secreted. Based upon the fact that the police discovered Mr. Brawner shirtless late at night in the middle of February, the jury may have concluded that Mr. Brawner was sleeping in the house on the evening on which the arrest transpired. There is also no dispute that the police observed Mr. Brawner peering out the front and rear bedroom windows as the arrest was about to take place. The jury may have accepted the Government's conclusion, based on the testimony and experience of police officers, that Mr. Brawner's behavior was evasive and was a last-ditch effort to toss the guns and the drugs. There is also no dispute that, after he was searched and arrested, the police observed Mr. Brawner, along with Ms. Johnson, squirming on the couch. Money was later found beneath one of the cushions on the sofa. The jury may have concluded that Mr. Brawner was involved in the sale and distribution of drugs from the premises. Finally, despite the fact that the drugs and guns were concealed in a closet, both items were located in the same bedroom where Mr. Brawner was apprehended, and both items were within Mr. Brawner's reach had the police chosen not to come upstairs immediately upon entering the house. This evidence indicates more than mere presence at the scene of the crime and does suffice to prove constructive possession of the drugs and the gun.

## IV. THE DEFENDANTS' REQUESTS FOR NEW TRIALS MUST BE DENIED BECAUSE THE VERDICTS RENDERED BY THE JURY DO NOT REPRESENT A MISCARRIAGE OF JUSTICE.

 The Court may grant the motion for a new trial if it finds that a new trial is "in the interest of justice." Fed.R.Crim.P. 33. When the trial court has committed an error "of sufficient magnitude to require reversal on appeal," a new trial may be granted. *See* 3 C. Wright, *Federal Practice & Procedure: Criminal 2d* § 556, at 85 (Supp.1991) (hereinafter, Wright: *Criminal 2d*). Thus, a defendant seeking a new trial must demonstrate not only that the Court committed plain error, but also

that this error affected the defendant's substantial rights. Wright, *Criminal 2d, supra,* § 551, at 238 (1982 & 1991 Supp.). *See generally Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

## A. BECAUSE THE REMARKS OF DETECTIVE STROUD WERE NOT UNDULY PREJUDICIAL, MS. JOHNSON IS NOT ENTITLED TO A NEW TRIAL.

 Ms. Johnson contends that the Court erred by admitting the testimony of Detective Stroud about the propensity of crack dealers to use the home of an addict as a distribution base. Ms. Johnson claims that this testimony was unduly prejudicial because it led the jury to speculate that this testimony applied to her, even though no evidence had been introduced to show that she was a drug addict.

This claim does not warrant a new trial because Ms. Johnson has not demonstrated that this testimony was unduly prejudicial and that its admission deprived her of a fair trial. One cannot assume that Detective Stroud's response to the prosecutor's hypothetical question had any prejudicial impact. As the defense admits, no evidence was introduced that Ms. Johnson was an addict. Thus, the remark of the Government's expert could have easily backfired; the lack of evidence to support any inference that Ms. Johnson was an addict may have led the jury to find that Ms. Johnson was not responsible for the crimes charged.

Ms. Johnson relies on the case of *United States v. Castillo,* 924 F.2d 1227 (2d Cir. 1991), to overturn the jury's verdict. Although the *Castillo* court held that admitting expert testimony as to matters within the ken of the jury was reversible error, the *Castillo* case does not mandate a new trial for Ms. Johnson in this case. The Court reversed the conviction on the gun count in *Castillo* in large part because the prosecutor stressed the importance of the expert's testimony in the closing argument, *id.* at 1234, and because the evidence on the firearm count in that case was weak.

*Id.* at 1234–1235 (no gun was ever recovered, the arrest report never mentioned the gun, and the only person witnessing the gun was a young police officer on the scene). These circumstances distinguish *Castillo* from this case.

Even assuming that Detective Stroud's testimony had an inflammatory effect in this case, any prejudice to Ms. Johnson was minimal under the *Castillo*-type scenario. The prosecutor never mentioned Detective Stroud's testimony as to the "crack house" in his closing argument, nor did he focus on the remark during the presentation of the Government's case. Moreover, unlike the *Castillo* case, the evidence against Ms. Johnson was sufficiently convincing that the remark of Detective Stroud would have had little impact on the jury. It was undisputed that Ms. Johnson was the lessee and that she lived in the house. It was also undisputed that Ms. Johnson was arrested in the house at a time when drug paraphernalia was in plain view. This evidence was sufficient for the jury to find that Ms. Johnson knew that her home was being used for the use, storage and distribution of drugs, and that she aided and abetted the possession with intent to distribute crack cocaine.

## B. BECAUSE THE COURT'S CURATIVE INSTRUCTIONS REMEDIED ANY POSSIBLE PREJUDICE SUFFERED BY MR. BRAWNER, THERE WAS NO ERROR IN DENYING A MISTRIAL.

 A government witness testified as to a hearsay statement made by a suspect at the scene of the crime. This suspect indicated to the Government witness that he and Mr. Hooks went to 73 "O" Street to borrow a gun which belonged to Mr. Brawner. The Court sustained defense counsel's objection and struck the statement. Mr. Brawner contends that this statement was unduly prejudicial and that the Court committed fatal error in denying his motion for a mistrial. Given this alleged error, Mr. Brawner claims that he is entitled to a new trial.

Although this testimony was prejudicial to Mr. Brawner, the Court did strike the testimony and instructed the jury to ignore the comment. This was sufficient to protect Mr. Brawner. Contrary to Mr. Brawner's suggestion, the hearsay testimony of the Government's witness in this case does not raise a *Bruton* problem. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). As the Court of Appeals recently explained in *United States v. Burroughs,* 935 F.2d 292, 294–95 (D.C.Cir.1991), *Bruton* problems do not arise when there is not a *confession* by a codefendant *admitted* into evidence.

In *Burroughs,* the defendant Nelson testified that a codefendant, who was being tried separately, told her that a purse containing drugs belonged to Burroughs, a third defendant who was on trial with Nelson. The Court held that this type of hearsay statement, which was not admitted into evidence, did not fall within *Bruton's* ambit. *Id.* Accordingly, the Court held that the case "is therefore not governed by *Bruton's* conclusive presumption that the jury will not, cannot, follow even the strongest instruction not to consider a codefendant's confession against the nontestifying defendant implicated by it." *Id.* This case is much like *Burroughs* in that the declarant made no "confession" and the statement was not given to the jury for its consideration.

The Court in *Burroughs* did consider whether the curative instruction was sufficient to cure any prejudicial effect of the testimony by evaluating the jury's verdict and the other evidence in the case. Examining the jury's verdict in this case leads the Court to believe that the jury carefully evaluated the evidence against all of the defendants. In fact, the jury's decision to acquit Mr. Hooks on all counts manifests that they carefully examined the nexus between each defendant the drugs and the gun. Mr. Hooks was found in the kitchen, and, according to the inadmissible testimony of the Government's witness, was allegedly on his way to borrow a gun from Tyrone Brawner. Had the jury considered this evidence, there would have been a nexus to link Mr. Hooks to the materials inside of the house. However, the jury's verdict of not guilty as to Mr. Hooks shows that the jury disregarded this evidence as they were instructed to do. The jury's verdict also makes sense when viewed against the evidence proffered as to Mr. Brawner: Mr. Brawner was in the bedroom where both the drugs and gun were found and was acting in a manner consistent with the Government's theory that he was trying to dispose of these items. Thus, even when disregarding the inadmissible testimony linking Mr. Brawner to the gun, the jury had enough evidence to convict.

Finally, the Court's decision to deny Mr. Brawner's motion for a mistrial was not reversible error. In evaluating a motion for mistrial, the trial court balances various factors.

> The trial court evaluates the demeanor of the witness, the content of the stricken testimony, its likely impact, and the probable effect of cautionary instructions swiftly and firmly administered.

*Burroughs, supra,* at 295. The Court of Appeals will overturn the trial court's decision to deny a motion for mistrial only when the trial court has abused its discretion. *Burroughs, supra,* at 295 (citing *United States v. Williams,* 822 F.2d 1174, 1188 (D.C.Cir.1987)).

The Court carefully weighed these factors in denying Mr. Brawner's motion for a mistrial. The Court determined that the hearsay statement would not have devastating impact because this witness was relating a comment made by an unidentified person who was not even arrested. Moreover, the comment itself was self-serving as it was made by a potential suspect who was pointing the finger at someone else inside the house. Further, the Court determined that a second-hand statement of this nature would carry little weight with the jury because it was vague and could never be corroborated. Finally, the Court was convinced that curative instructions could prevent any harm to Mr. Brawner because these instructions would alert the jury to the unreliability of the comment. While, in hindsight, it may be easier to second-guess such a decision, the

**398**

Court did carefully balance these factors and did what was necessary to remedy any potential harms to Mr. Brawner.

## V. CONCLUSION.

The jury's verdicts against both defendants are supported by sufficient evidence. The Court also finds that a new trial for Ms. Johnson is unwarranted; admitting the testimony of Detective Stroud was not prejudicial given the strength of the evidence presented by the Government and the nature of the expert's testimony. Finally, the Court finds that the inadmissible hearsay statement of a Government witness does not entitle Mr. Brawner to a new trial because the Court did not admit the evidence and administered a curative instruction immediately. Accordingly, the defendants' motions shall be denied.