Yasin Muhammed **BASARDH,**
(ISN 252), Petitioner

v.

Robert M. **GATES, U.S. Secretary**
of Defense, Respondent.

No. 07–1192.

United States Court of Appeals,
District of Columbia Circuit.

Nov. 4, 2008.

Gregory G. Katsas, Acting Assistant Attorney General, U.S. Department of Justice, Jonathan F. Cohn, Deputy Assistant Attorney General, and Douglas N. Letter, Robert M. Loeb, Barbara C. Biddle, and Jeffrey Clair, Attorneys, were on the motion to hold case in abeyance and the reply.

Steven T. Wax, Federal Public Defender, Office of the Federal Public Defender for the District of Oregon, and Stephen R. Sady, Chief Deputy Federal Public Defender, were on the response.

Before: HENDERSON, RANDOLPH, and BROWN, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM.

The government has moved to hold in abeyance Yasin Muhammed Basardh's petition for direct judicial review filed under the Detainee Treatment Act of 2005(DTA) § 1005(e)(2), Pub.L. No. 109–148, 119 Stat. 2680 (2005) (reprinted at 10 U.S.C. § 801 note).

Basardh is a detainee at the United States Naval Base at Guantanamo Bay, Cuba. A Combatant Status Review Tribunal determined that he is an enemy combatant. Basardh brought two actions contesting the legality of his detention. The first was a petition for a writ of habeas corpus in the district court. This was stayed pending the Supreme Court's decision in *Boumediene v. Bush,* —— U.S. ——, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008), regarding whether § 7 of the Mili-

tary Commissions Act of 2006, Pub.L. No. 109–366, 120 Stat. 2600 (2006) (codified in part at 28 U.S.C. § 2241 & note), violated the Suspension Clause of the Constitution, ART. 1, § 9, cl. 2, when it deprived federal courts of jurisdiction over habeas actions brought by detainees at Guantanamo. The stay was dissolved after the Court ruled in the detainees' favor in June 2008.

Basardh's second action—which is the subject of the government's motion—is a petition for direct review of the Tribunal's determination of his status. He filed the petition in this court pursuant to Detainee Treatment Act § 1005(e)(2). By our count, more than 150 Guantanamo detainees have similar petitions pending in our court.

■ An order granting a motion to hold a petition for review in abeyance stays all proceedings in our court unless we direct otherwise. *Cf. Clinton v. Jones,* 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). Often we issue such orders in light of other pending proceedings that may affect the outcome of the case before us. *See, e.g., Canadian Ass'n of Petroleum Producers v. FERC,* 308 F.3d 11, 14 (D.C.Cir.2002); *Westphal v. Dep't of Commerce,* 18 F.3d 950, 951 (D.C.Cir.1994). We may also take account of the traditional factors in granting a stay, including the likelihood that the movant will prevail when the case is finally adjudicated. *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n,* 259 F.2d 921, 925 (D.C.Cir.1958). Each of these considerations, and others, weighs in favor of granting the government's motion.

■ The habeas action in the district court and the petition for direct review in our court raise common issues regarding the legality of Basardh's detention. Resolution of the habeas action in his favor may entirely, or partially, moot his direct review petition. This prospect militates in favor of holding the direct review petition

in abeyance. There is a "longstanding policy of the law to avoid duplicative litigative activity." *Envtl. Def. Fund v. Reilly,* 909 F.2d 1497, 1507 (D.C.Cir.1990). And the Supreme Court in *Boumediene* said that as between the two types of proceedings, habeas is the preferred course for the detainees. 128 S.Ct. at 2266; *Parhat v. Gates,* 532 F.3d 834, 851 (D.C.Cir.2008).

There are additional reasons for holding this case in abeyance. The first stems in part from the panel's reinstatement of its decision in *Bismullah v. Gates,* 501 F.3d 178 (D.C.Cir.2007). The second is the distinct possibility that in light of *Boumediene* we have lost jurisdiction over Basardh's petition and every other petition filed under the Detainee Treatment Act. These factors would likely satisfy the more exacting standard for issuing a stay or preliminary injunction, *see Va. Petroleum Jobbers,* 259 F.2d at 925; they are surely enough to justify an order holding a case in abeyance on our own docket.

As to the first, there can be no question that easing the administrative burden on the military, the intelligence and the litigating arms of government is a "legitimate objective." *Boumediene,* 128 S.Ct. at 2276. The government is dedicating considerable resources to preparing factual returns in the habeas cases. Parallel litigation would needlessly increase the government's production burden—with its attendant risk of national security breaches in light of *Bismullah's* requirement that, on direct review, the government must gather and produce sensitive information beyond the Tribunal record. Short of this, the government has indicated that because it has no reliable means of recreating the information *Bismullah* requires, the only practical means of complying may be to convene new Tribunal hearings for petitioners like Basardh.

As to the second consideration, there is serious doubt about our jurisdiction over these petitions—and thus a strong probability that the government will prevail, *see Va. Petroleum Jobbers,* 259 F.2d at 925; *see also Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). The doubt arises from application of the established rules of severability.[1] It is perfectly clear that Congress passed the Detainee Treatment Act in order to restrict habeas jurisdiction after the Supreme Court held, as a matter of statutory construction, that Guantanamo detainees could bring habeas petitions in federal court. *Rasul v. Bush,* 542 U.S. 466, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004). Congress directed that judicial review of Tribunal determinations would be the exclusive remedy, that the review would be in the court of appeals, and that the district court had no jurisdiction over habeas petitions filed by Guantanamo detainees. Detainee Treatment Act § 1005(e)(1)-(2). The Supreme Court then held—again as a matter of statutory construction—that the jurisdiction-stripping provision of the Detainee Treatment Act did not apply to habeas actions already pending when the Act became law. *Hamdan v. Rumsfeld,* 548 U.S. 557, 575, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006). Congress responded with § 7 of the Military Commissions Act, which made clear that the elimination of habeas jurisdiction applied to pending petitions as well. *See* Military Commissions Act § 7(b). The Supreme Court in *Boumediene* held that depriving the district court of jurisdiction over Guantanamo habeas cases violated the clause of the Constitution governing suspension of the writ of habeas corpus. 128 S.Ct. at 2240.

We believe there is a high probability that a consequence of *Boumediene*'s striking down the legislative bar against habeas jurisdiction is that the direct judicial review provision of the Detainee Treatment Act fell as well. It has long been the rule that if separate statutory provisions are so "dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them." *Allen v. Louisiana,* 103 U.S. 80, 84, 26 L.Ed. 318 (1880) (citation and internal quotation marks omitted). Severability thus turns on legislative intent. *Minnesota v. Mille Lacs Band of Chippewa Indians,* 526 U.S. 172, 191, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999). Courts must ask: "Would Congress still have passed the valid sections had it known about the constitutional invalidity of the other portions of the statute?" *U.S. v. Booker,* 543 U.S. 220, 246, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (quoting *Denver Area Ed. Telecomm. Consortium, Inc. v. FCC,* 518 U.S. 727, 767, 116 S.Ct. 2374, 135 L.Ed.2d 888 (1996) (plurality opinion)) (internal quotation marks omitted).

Here the probable answer to that question is that Congress would not have enacted the direct judicial review provision without the concomitant ban on habeas jurisdiction. There is no rational reason why, if Congress had known that habeas jurisdiction had to be preserved, it would have also wanted to give Guan-

---

**1.** Neither party has briefed this issue, but that does not preclude our considering it *sua sponte. See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101–02, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). At all events, the government has now argued, in light of the severability doctrine, that we lack jurisdiction over Detainee Treatment Act petitions. Government's Pet. for Reh'g & Suggestion for Reh'g En Banc at 4–7, *Bismullah v. Gates,* No. 06–1197 (D.C.Cir. Oct. 6, 2008).

tanamo detainees the option of bringing a simultaneous action directly in the court of appeals. Congress designed the direct review regime to limit judicial intervention and to consolidate review in one forum. *See Boumediene*, 128 S.Ct. at 2265–66. The jurisdiction-stripping and granting provisions in the Detainee Treatment Act were inextricably linked in text and purpose.[2] The Military Commissions Act responded to *Hamdan* by clarifying that in return for judicial review in our court, habeas was abolished for all detainees.

The legislative history confirms this interpretation. Congress understood direct judicial review as a substitute for habeas.[3] Both the Senate and the House rejected proposed amendments to the Military Commissions Act that would have afforded detainees access to dual remedies. *See* 152 Cong. Rec. S10369 (Sept. 28, 2006); H. Rep. No. 109–664, pt. 2 at 156–159 (2006). If severed from the denial of habeas, the direct review regime could no longer consolidate proceedings in "one court," H.

Rep. No. 109–664, pt. 2 at 155 (statement of Rep. Lungren), or avoid "swamping the system" with parallel challenges, 151 Cong. Rec. S12732 (Nov. 14, 2005) (statement of Sen. Graham).[4]

In short, as *Boumediene* recognized, the Detainee Treatment Act was intended to circumscribe judicial scrutiny by replacing habeas with a narrower remedy. *Boumediene*, 128 S.Ct. at 2265–66. "Otherwise there would have been no, or very little, purpose for enacting the [Detainee Treatment Act]." *Id.* at 2266.[5] Now that *Boumediene* has restored habeas jurisdiction, the original reasons for direct review have vanished. Since the direct review provision can no longer "function in a *manner* consistent with the intent of Congress," *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987) (emphasis in original), it too must fall.

As against this one might point to the language in *Boumediene* stating that both the Detainee Treatment Act and the Tri-

---

**2.** Section 1005(e)(1) of the Detainee Treatment Act eliminated jurisdiction for federal courts "[e]xcept as provided in section 1005[(e)(2)]," which empowered this court to review Combatant Status Review Tribunal determinations. Direct review jurisdiction in our court was to be "exclusive," and the withdrawal of district court habeas jurisdiction made it so. *See Boumediene*, 128 S.Ct. at 2265.

**3.** *See, e.g.,* 152 Cong. Rec. S10357 (Sept. 28, 2006) (statement of Sen. Cornyn) ("[Section 7] will substitute the blizzard of litigation instigated by *Rasul v. Bush* with a narrow DC Circuit-only review of the [Tribunal] hearings."); *id.* at S10361 ("[W]e have provided an adequate substitute remedy, which I believe is entirely consistent with the U.S. Supreme Court's decisions in this area."); *id.* at S10367 (statement of Sen. Graham) ("Why do we—I and others—want to take habeas off the table and replace it with something else? I don't believe judges should be making military decisions in a time of war.").

**4.** *See also* 152 Cong. Rec. H7938 (Sept. 29, 2006) (statement of Rep. Hunter) ("The practical effect of [Section 7] will be to eliminate the hundreds of detainee lawsuits that are pending in courts throughout the country and to consolidate all detainee treatment cases in the D.C. Circuit."); 152 Cong. Rec. S10374 (Sept. 28, 2006) (statement of Sen. Domenici) (giving detainees the right to habeas corpus "will clog our already overburdened courts").

**5.** This statement in *Boumediene* does not contradict *Hamdan*. The Court in *Hamdan* stated that it was not "absurd" to have a dual system allowing detainees with pending habeas petitions to bring direct review actions in the court of appeals. 548 U.S. at 583, 126 S.Ct. 2749. The Court in *Boumediene* was speaking about a different subject—Congress' intent in replacing habeas jurisdiction for all cases, pending or otherwise, with direct review in our court. And of course Congress, in response to *Hamdan*, thought it made no sense to have the dual system the Court envisioned.

bunal "process remain intact." 128 S.Ct. at 2275. Whatever the Court intended by this remark, it could not have meant to decide whether the direct review provision fell. None of the parties argued the point, the issue was not before the Court,[6] the *Boumediene* opinion cited none of the cases dealing with severability and the Court did not purport to engage in severability analysis. Courts routinely reserve judgment on severability, especially when, as in *Boumediene*, no party briefed the issue or raised it at oral argument. *See, e.g., Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 366, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002); *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 549, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001); *Exxon Corp. v. Eagerton*, 462 U.S. 176, 196, 103 S.Ct. 2296, 76 L.Ed.2d 497 (1983); *see also Henderson v. Kennedy*, 253 F.3d 12, 16 (D.C.Cir.2001).

One other circumstance is worth mentioning. *Boumediene* struck down a portion of § 7 of the Military Commissions Act whereas the direct review provision is in the Detainee Treatment Act. It is hard to see why the titles of these provisions should be of any moment. As the history of Congress' responses to the Supreme Court's Guantanamo decisions shows conclusively, the jurisdictional legislation must be considered as one whole. *See Boumediene*, 128 S.Ct. at 2243–44. This aspect of the Military Commissions Act—although given a name different from the Detainee Treatment Act—had the effect of amending the latter in order to overrule *Hamdan*.[7] Viewing the legislation that way plainly invokes the law of severability.

For the foregoing reasons, the government's motion to hold this case in abeyance pending the conclusion of Basardh's habeas proceedings in the district court is granted.

*So ordered.*

---

**6.** We exercised jurisdiction over a direct review petition in *Parhat*. But the severability issue was neither briefed nor argued and the panel's opinion does not mention it. *Parhat* therefore has no precedential force on the question we are considering. *See Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 352 (D.C.Cir.

2007); *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 n. 6 (D.C.Cir.1996) (en banc).

**7.** The provisions in both the Detainee Treatment Act and the Military Commissions Act barring habeas jurisdiction were amendments to the general habeas corpus statute, 28 U.S.C. § 2241.