# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 28, 2022          Decided June 3, 2022

No. 20-3058

UNITED STATES OF AMERICA,
APPELLEE

v.

MICHAEL PALMER, ALSO KNOWN AS TONY, ALSO KNOWN AS
KNOT, ALSO KNOWN AS JAMES,
APPELLANT

———

Consolidated with 20-3060

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:89-cr-00036-1)

———

*Jonathan Zucker*, appointed by the court, argued the cause and filed the briefs for appellant.

*Peter S. Smith*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Chrisellen R. Kolb*, *Nicholas P. Coleman*, and *Timothy R. Cahill*, Assistant U.S. Attorneys. *Mark Hobel*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and JACKSON\*, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In this consolidated appeal, Michael Palmer mounts two challenges to a life sentence for running a continuing criminal enterprise (CCE) centered around crack cocaine distribution. *See* 21 U.S.C. § 848(b). In particular, Palmer appeals the district court's denials of his motions for relief under the First Step Act of 2018 and 28 U.S.C. § 2255. After the district court issued its First Step Act order, we decided *United States v. White*, 984 F.3d 76 (D.C. Cir. 2020), in which we elaborated on First Step Act proceedings. Because it is unclear whether the district court began from the correct statutory mandatory minimum sentence in light of *White*, we remand the First Step Act appeal to the district court for it to clarify the applicable baseline; and, because the district court could change Palmer's sentence on remand, we hold the section 2255 appeal in abeyance for now.

## I. BACKGROUND

### A. STATUTORY BACKGROUND

As modified by the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 1253, 100 Stat. 3207, 3207-14 to 3207-15 (codified as amended at 21 U.S.C. § 848), a CCE offense includes a felony violation of the federal drug laws that is part of a series of drug-law violations undertaken in concert with five or more other persons. *See* 21 U.S.C. § 848(c) (1988).[1]

---

\* Circuit Judge Jackson was a member of the panel at the time the case was argued but did not participate in this opinion.

---

[1]  In 1989, when Palmer was sentenced, 21 U.S.C. § 848 provided, in relevant part:

(a)  Penalties; forfeitures

Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment, to a fine not to exceed the greater of that authorized in accordance with the provisions of title 18 or $2,000,000 if the defendant is an individual . . . , and to the forfeiture prescribed in section 853 of this title.

(b)  Life imprisonment for engaging in continuing criminal enterprise

Any person who engages in a continuing criminal enterprise shall be imprisoned for life and fined in accordance with subsection (a) of this section, if—

(1)  such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and

(2)  (A) the violation referred to in [subsection (c)(1)] of this section involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title . . . .

(c)  "Continuing criminal enterprise" defined

For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

Although the original CCE statute included a ten-year mandatory minimum, *see* Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, § 408, 84 Stat. 1236, 1265; *see also* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 6481(a), 102 Stat. 4181, 4382 (mandatory minimum in section 848(a) increased from ten to twenty years), the Congress inserted the "Super CCE" provision, mandating a life sentence if the offender is one of the "principal administrators, organizers, or leaders" of the enterprise and the underlying felony "involved at least 300 times the quantity of a substance described in" 21 U.S.C. § 841(b)(1)(B), *see* 21 U.S.C. § 848(b) (1988); *see also United States v. Williams-Davis*, 90 F.3d 490, 510 (D.C. Cir. 1996) (detailing genesis of Super CCE provision).

---

(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

    (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

    (B) from which such person obtains substantial income or resources.

21 U.S.C. § 848 (1988).

Elsewhere in the Anti-Drug Abuse Act of 1986, the Congress established a quantity-based sentencing regime that punished crack cocaine offenses 100 times more harshly than powder cocaine offenses. *See* § 1002, 100 Stat. at 3207–2 to 3207–4 (codified at 21 U.S.C. § 841(b)(1) (1988)). For example, a conviction of possession of 5 grams of crack cocaine with intent to distribute called for the same five-year mandatory minimum prison sentence as a conviction of possession of 500 grams of powder cocaine with intent to distribute. *See id.*; *Dorsey v. United States*, 567 U.S. 260, 263–64 (2012). Incorporating those quantities into the Super CCE offense's "300 times" threshold, the leader of a drug trafficking operation could be convicted of the Super CCE offense based on 1,500 grams of crack cocaine or 150,000 grams of powder cocaine.[2]

Over the next two decades, the United States Sentencing Commission (USSC or Commission) "and others in the law enforcement community strongly criticized [the] Congress' decision to set the crack-to-powder mandatory minimum ratio at 100-to-1." *Dorsey*, 567 U.S. at 268. "[A]lthough the Commission thought that it was reasonable to conclude that 'crack cocaine poses greater harms to society than does powder cocaine,'" *Terry v. United* States, 141 S. Ct. 1858, 1861 (2021) (quoting USSC, Special Report to the Congress: Cocaine and Federal Sentencing Policy 195–97 (Feb. 1995) (1995 Report)),

---

[2] In his section 2255 appeal, Palmer contends that his previous counsel was ineffective for not arguing that the single, underlying felony violation referenced in 21 U.S.C. § 848(c)(1)—not the series of violations referenced in subsection (c)(2)—must involve 1,500 grams of crack cocaine to trigger the Super CCE provision. *See United States v. Atencio*, 435 F.3d 1222, 1230–31 (10th Cir. 2006). Because we do not reach the section 2255 appeal, we need not address Palmer's argument.

the Commission determined that the 100-to-1 disparity was too large because, *inter alia*, it overstated the comparative harms of crack and powder cocaine, defeated the "'proportionality' goal" of punishing prolific drug traffickers more severely than retail-level dealers and created a perception that the sentencing regime was race-based because those convicted of crack cocaine offenses were disproportionately black, *Dorsey*, 567 U.S. at 268–69 (citing *Kimbrough v. United States*, 552 U.S. 85, 97–98 (2007); 1995 Report at 197–98; USSC, Special Report to Congress: Cocaine and Federal Sentencing Policy 8 (Apr. 1997); USSC, Report to Congress: Cocaine and Federal Sentencing Policy 91, 103 (May 2002); USSC, Report to Congress: Cocaine and Federal Sentencing Policy 8 (May 2007)).

In the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, the Congress responded to the Commission's call for reform and reduced the crack-to-powder disparity to 18-to-1. *Terry*, 141 S. Ct. at 1861. To narrow the gap, section 2 of the Fair Sentencing Act left the powder quantities the same and increased the crack cocaine quantity thresholds that triggered mandatory minimums. § 2(a), 124 Stat. at 2372. In relevant part, the triggering quantity increased from 5 grams to 28 grams. *Id.* § 2(a)(2), 124 Stat. at 2372. The Fair Sentencing Act therefore increased the threshold to trigger a mandatory life sentence under the Super CCE provision from 1,500 grams to 8,400 grams (300 times 28 grams). "These changes did not apply to those who had been sentenced before 2010." *Terry*, 141 S. Ct. at 1861.

Enter the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The First Step Act made the Fair Sentencing Act's quantity changes retroactive and gives the court the discretion to reduce the sentences of certain crack cocaine offenders. *See* First Step Act § 404, 132 Stat. at 5222; *Terry*, 141 S. Ct. at

1862. Under section 404 of the First Step Act, a defendant who committed a "covered offense" may move for a reduced sentence "as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." § 404(b), 132 Stat. at 5222. A "'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before" the enactment of the Fair Sentencing Act in 2010. *See id.* § 404(a), 132 Stat. at 5222.

## B. FACTUAL AND PROCEDURAL BACKGROUND

In the late 1980s, Michael Palmer ran a large-scale drug conspiracy that sold crack cocaine in Washington, D.C. In 1989, a jury convicted him on twelve counts, including, significantly, running a CCE "involving more than 1500 grams" of crack cocaine and thus triggering the Super CCE provision. *United States v. Harris*, 959 F.2d 246, 253 (D.C. Cir. 1992) (per curiam). After sentencing Palmer to the statutorily required mandatory minimum—life without the possibility of parole, 21 U.S.C. § 848(b) (1988)—the sentencing judge commented that Palmer's sentence was "long and harsh" because his "conspiracy brought between 100 and 200 kilo[gram]s of crack [cocaine] into this city; sold it in several neighborhoods; created or supported hundreds, if not thousands, of addicts"; and "created havoc and misery in [its] path." App. 19–20. The Presentence Investigation Report also estimated that Palmer's operation distributed more than 150 kilograms of crack cocaine. More broadly, in discussing the "sentencing principles" behind the sentences for Palmer and his lieutenants, the sentencing judge noted that

> more important than punishment is . . .
> deterrence. Deterrence means sending a

message to others. The message is this: if you bring large amounts of drugs into the District of Columbia for sale, and particularly if it's operated with weapons and with violence, you will go to the penitentiary for a long time, perhaps for life.

Tr. of Harris Sentencing, at 4. The sentencing judge also remarked, "In the 25 years . . . that I have been on the bench, I have seldom, if ever, seen a case in which the evidence was as overwhelming as it was in this case . . . and particularly [as to] the guilt of Mr. Palmer." Tr. of Palmer Sentencing, at 7.

We affirmed Palmer's convictions on direct appeal, *Harris*, 959 F.2d at 252–57, and over the last twenty years, Palmer has pressed numerous claims seeking relief under 28 U.S.C. § 2255, *see United States v. Palmer,* 97 F.3d 593 (Table) (D.C. Cir. 1996) (per curiam); *United States v. Palmer*, 296 F.3d 1135 (D.C. Cir. 2002); *United States v. Palmer*, 902 F. Supp. 2d 1, 4, 10–11 (D.D.C. 2012). In 2012, the district court consolidated Palmer's claims and partially granted his section 2255 petition, vacating five of his convictions based on changes in the law of merger. *Palmer*, 902 F. Supp. 2d at 10–12. The district court, however, left the CCE conviction and sentence intact, in addition to six other counts, *id.* at 11–12, and, in 2015, it issued, at Palmer's request, an amended judgment reflecting the vacatur of the merged counts, App. 31. In 2017, we affirmed the amended judgment. *See United States v. Palmer*, 854 F.3d 39, 41–42 (D.C. Cir.), *cert. denied*, 138 S. Ct. 286 (2017).

On September 28, 2018, Palmer filed a *pro se* section 2255 petition, which his counsel supplemented on August 11, 2019. In an unpublished order on July 2, 2020, the district court denied the supplemented motion, concluding that Palmer's

section 2255 petition was successive under 28 U.S.C. § 2255(h) and therefore the court "lack[ed] jurisdiction to rule on the motion" without this court's certification. App. 127–29. On July 31, 2020, Palmer's counsel requested a certificate of appealability regarding the section 2255 order, arguing, *inter alia*, that his motion was not successive because it attacked the 2015 amended judgment, which amounted to a "new judgment" per *Magwood v. Patterson*, 561 U.S. 320 (2010). Shortly thereafter, the district court granted the certificate of appealability.

On January 19, 2020, while his section 2255 petition was pending, Palmer filed the primary motion at issue here: a *pro se* motion for a reduced sentence pursuant to section 404 of the First Step Act. Having served more than thirty years by then, Palmer challenged only the life sentence associated with the Super CCE conviction. In his motion, Palmer first argued that he was eligible for relief because the change in the drug quantity associated with 21 U.S.C. § 848(b) made it a "covered offense" under section 404(a) of the First Step Act. He asked the court to exercise its discretion under section 404(b) to reduce his sentence to time served and to release him on his own recognizance. In assessing the 18 U.S.C. § 3553(a) sentencing factors, he urged the court to focus on mitigating rehabilitation evidence and to consider his post-conviction conduct. *Id.* at 29–30.

On the same day it issued the section 2255 order, the district court denied Palmer's First Step Act motion. *Id.* at 138–49 (First Step Act Order). The district court first determined that Palmer was not eligible for First Step Act relief because the relevant drug quantity for eligibility is "the actual quantity the defendant is held responsible for at sentencing," not the drug quantity in the statute of conviction. *Id.* at 142–46. After noting the large quantities of drugs attributable to Palmer's

operation, the district court concluded that the Congress "did not intend to sweep in defendants who were still above the increased mandatory minimum quantity threshold." *Id.* at 146. In the alternative, the district court concluded that "[e]ven if Palmer were eligible under the First Step Act . . . the Court would not in its discretion grant his motion for a reduced sentence." *Id.* at 147. In the key paragraph, the court continued:

> Palmer is not the type of offender contemplated by either the Fair Sentencing Act or the First Step Act. The Fair Sentencing Act sought to reduce sentencing disparities between crack and powder cocaine defendants by reforming the sentencing regimes applicable to crack cocaine defendants. Section 404 of the First Step Act merely authorized the retroactive application of the Fair Sentencing Act. Palmer faces no disparity between the mandatory minimum he was sentenced under and the one he would have faced "if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time." 132 Stat. 5194 § 404(b).

*Id.* (ellipsis in original).

The court then concluded that the section 3553(a) factors did not militate in favor of a sentence reduction. After highlighting two of the factors—(1) the nature of the offense and the characteristics of the defendant and (2) the need for the sentence because of the seriousness of the offense—the court noted Palmer's disciplinary sanctions during his incarceration and the sentencing judge's comments regarding the breadth of the Palmer operation and its effect on the community. Finally, the court commented that it had "carefully considered the impressive supportive letters . . . from Palmer's family and

friends" but that the seriousness of Palmer's crimes meant that "a sentence reduction [was] not warranted." *Id.* at 148.

In letters sent to the district court on August 12 and 13, 2020, Palmer, acting *pro se*, wrote that he wanted to appeal the district court's orders denying his First Step Act motion and section 2255 petition. *Id.* at 161–64, 167–74. Palmer filed that letter *pro se* because his counsel had passed away on August 3, 2020, after having filed Palmer's requested certificate of appealability on July 31. In his August 12 letter, Palmer stated that he learned of his counsel's death on August 7. In a September 3, 2020 order, the district court concluded that the letters "provide adequate notice that [Palmer] intends to appeal under the motion his counsel filed on July 31, 2020, which the Court will therefore consider a Notice of Appeal." Order, *United States v. Palmer*, Cr. No. 89-36 (D.D.C. Sept. 3, 2020), ECF No. 510.

## II. ANALYSIS

### A. FIRST STEP ACT ORDER

We have appellate jurisdiction of the First Step Act Order under 28 U.S.C. § 1291. *See United States v. Lawrence*, 1 F.4th 40, 45 (D.C. Cir. 2021). "[T]he abuse-of-discretion standard of review applies to appellate review of all sentencing decisions." *White*, 984 F.3d at 85 (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). We review statutory interpretation questions *de novo*. *Id.*

Palmer first argues, and the government concedes, that in light of *White*, the district court incorrectly concluded that Palmer is ineligible for First Step Act relief. The government argues, however, that remand is inappropriate because Palmer's notice of appeal was untimely and because we can rely on the district court's alternative holding—that even if

Palmer is eligible, the court would not exercise its discretion to grant relief. *See* App. 147–48. We disagree. We conclude that the court granted—by implication if not expressly—an extension to file the notice of appeal and because it is unclear whether the district court's exercise of discretion started from the correct mandatory minimum post-*White*, we remand for clarification. *See Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018) ("If the court of appeals considers a[] [sentencing] explanation inadequate in a particular case, it can send the case back to the district court for a more complete explanation.").

### 1. Timeliness of Notice of Appeal

Under Federal Rule of Appellate Procedure 4(b)(1)(A), the government asserts, Palmer's *pro se* notice of appeal is untimely because it was due 14 days after the district court entered the First Step Act Order on July 2, 2020. It was not placed in the prison mail system until August 12, 2020—41 days after the entry of the order. The government contends that Palmer "has offered no justification for his failure to note an appeal on or before July 16, 2020," and that we should dismiss his challenge. In rebuttal, Palmer's appellate counsel acknowledges that the notice arrived well after the 14-day deadline but asserts that the notice was nevertheless timely because the district court implicitly granted a 30-day extension until August 16 under Rule 4(b)(4) when it treated the August 12 letter as a notice of appeal and ordered its filing. Fed. R. App. P. 4(b)(4) ("Upon a finding of excusable neglect or good cause, the district court may—before or after the time has expired, with or without motion and notice—extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b).").

We have previously "declined [an appellant's] invitation to equate the ministerial act of docketing a tardy notice of appeal with an implicit grant of an extension of time by the district court." *United States v. Long*, 905 F.2d 1572, 1574 (D.C. Cir. 1990). In *Long*, a defendant-appellant also filed a notice after the Rule 4(b) deadline and the district court docketed the notice. *Id.* at 1574. Writing for the court, then-Judge Thomas reasoned: "Docketing a notice of appeal is a clerical task, and does not require the approbation of the trial judge. It thus presents no occasion for a party to make a showing of excusable neglect." *Id.* It was therefore important that there was no evidence the district judge saw the notice or had an opportunity to determine whether there was excusable neglect. We remanded to the district court for it to determine whether excusable neglect existed. *Id.* at 1575.

We noted in *Long*, however, that "there may be cases in which an implicit finding of excusable neglect would be less of a fiction." *Id.* at 1574 n.2. For example, if "a trial judge takes some explicit action with respect to a tardy appeal, the judge at a minimum is aware of the appeal; under these circumstances, his action could arguably be construed as an implicit finding of excusable neglect." *Id.* The September 3, 2020 order shows that the district judge was "at a minimum aware of the appeal": he noted the denial of Palmer's section 2255 and First Step Act motions, indicated that he had read Palmer's handwritten letters by noting that they "provide[d] adequate notice that he intend[ed] to appeal" and mentioned the death of Palmer's counsel on August 3. Order, *United States v. Palmer*, Cr. No. 89-36 (D.D.C. Sept. 3, 2020), ECF No. 510. The district judge also ordered the docketing of the letters and affixed his signature to those orders. In addition, Palmer expressed his desire to appeal on page five of one letter and across two pages of another. At bottom, the order and letters manifest the district judge's analysis and awareness of Palmer's situation—

including that Palmer was in lockdown beginning in February 2020 due to the coronavirus pandemic—neither of which existed in *Long*. Indeed, the district judge's confirmation that the letters provided "adequate notice" evinces a level of approbation absent from *Long*. Accordingly, it is clear to us that the district judge's order "constitute[s] an implicit extension of time," *Long*, 905 F.2d at 1574 n.2, and a remand for the court to do so again would waste time and judicial resources.

## 2. Merits

Decided five months after the district court issued its First Step Act Order, *White* provides our Circuit's framework to evaluate First Step Act motions. *See* 984 F.3d at 85–93. First, under section 404(a), the court must determine whether a defendant is eligible for relief—that is, whether the movant committed a "covered offense," defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." First Step Act § 404(a), 132 Stat. at 5222. In *White*, the district court had determined that even though the appellant-defendants were "eligible" for relief, relief was "not 'available'" because, "[according to] judge-found drug quantities," the statutory penalties for certain counts were not modified by section 2 of the Fair Sentencing Act. 984 F.3d at 92. We reversed, holding that there is no "availability test" and that in assessing eligibility, the district court "cannot determine, using judge- or jury-found drug quantities, what effect the Fair Sentencing Act 'would have had' on a defendant's sentence." *Id.* at 86–87.

As occurred in *White*, the district court here used judge-found drug quantities to determine that Palmer was not eligible for section 404 relief. As described above, *supra* at 6, section

2(a) of the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B) necessary to trigger certain mandatory minimum penalties. *See* 124 Stat. at 2372. The Super CCE offense incorporated those threshold quantities by requiring the involvement of "at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)." 21 U.S.C. § 848(b)(2)(A) (1988). With the retroactive application of the Fair Sentencing Act, 8,400 grams—rather than 1,500 grams— became the minimum triggering quantity to support a Super CCE offense. *See* Fair Sentencing Act § 2(a), 124 Stat. at 2372 (noting increase from 5 to 28 grams in 21 U.S.C. § 841(b)(1)(B)(iii)). Accordingly, as the government agrees, Palmer's Super CCE offense is a "covered offense" and the district court, which did not have the benefit of our decision in *White*, incorrectly gauged Palmer's section 404 eligibility because "whether an offense is 'covered' does not depend on the actual drug amounts attributed to a defendant." 984 F.3d at 86.

Second, under section 404(b), a "court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. Put simply, once a defendant is considered eligible, the district court exercises its "broad discretion" to decide "whether it *should* reduce the sentence." *White*, 984 F.3d at 88 (quoting *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020)); *see also* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."), 132 Stat. at 5222.

*White* also spells out what considerations are relevant in assessing whether to grant a sentence reduction. Relying on *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975), we began

by noting the remedial purpose of the First Step Act, including that it and the Fair Sentencing Act "are strong remedial statutes, meant to rectify disproportionate and racially disparate sentencing penalties." *White*, 984 F.3d at 90. We then agreed with the Seventh Circuit: to further the goal of the First Step Act, a "district court may consider all relevant factors when determining whether an eligible defendant merits relief under the First Step Act." *Id.* (quoting *Hudson*, 967 F.3d at 611). We specified that certain factors, including "*new statutory minimum or maximum penalties*; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct," ensure that a sentence is "sufficient, but not greater than necessary, to fulfill the purposes of [18 U.S.C.] § 3553(a)." *Id.* (emphasis added) (quoting *Hudson*, 967 F.3d at 609). We stressed the importance of post-sentencing conduct, *id.*, before noting that on remand in that case, the district court must "give proper consideration to the sentencing factors outlined in [section] 3553(a)," *id.* at 93; *see also Lawrence*, 1 F.4th at 43–44. Consideration of the section 3553(a) factors in *White* was "especially important" given the "complexity" of the record. 984 F.3d at 90.[3] Finally,

---

[3] As we noted in *White*, "[e]very circuit court that has examined the issue has held that a district court may, or must, consider the 18 U.S.C. § 3553(a) sentencing factors when passing on a motion for relief under section 404 of the First Step Act." 984 F.3d at 90 (citing *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020); *United States v. Easter*, 975 F.3d 318, 323–26 (3d Cir. 2020); *United States v. Jackson*, 945 F.3d 315, 322 n.7 (5th Cir. 2019)). *White* is nonetheless slightly opaque as to whether section 3553(a) factors may or must be considered in all cases. *See id.* at 90–91 (district courts "may consider all relevant factors" and section 3553(a) factors are "especially important" in cases with "complex[]" records), 93 (district court to consider section 3553(a) factors on remand). Subsequently, in *Lawrence*, we characterized *White* as having issued a directive that district courts "must consider 'all relevant factors[,]'

the district court's sentence reduction decision "must be procedurally reasonable and supported by a sufficiently compelling justification." *Id.* at 91 (quoting *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020)); *see also United States v. Collington*, 995 F.3d 347, 359 (4th Cir. 2021) (adopting reasonableness review).

Palmer challenges the district court's treatment of the "relevant factors." Primarily, he argues that the district court erred by using the wrong statutory minimum sentence in deciding whether to grant relief. Once again, *White* is instructive. In determining the "new statutory minimum" penalty that sets the lower bound of the district court's discretion "to impose a sentence 'as if section 2 . . . of the Fair Sentencing Act [was] in effect,' the court must use the revised penalty range now applicable to the drug amount in the original statute of conviction." *White*, 984 F.3d at 86.

For spearheading a crack cocaine network, a jury convicted Palmer of the Super CCE offense, a statute of conviction originally involving at least 1,500 grams of crack cocaine. Plainly, that amount is smaller than the 8,400 grams necessary to trigger the Super CCE threshold under section 2(a) of the Fair Sentencing Act. 124 Stat. at 2372. The 1,500-gram

including not only the sentencing factors outlined at 18 U.S.C. § 3553(a), but potentially also 'new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct.'" *See Lawrence*, 1 F.4th 40, 43–44 (quoting *White*, 984 F.3d at 90, 92–93). In *Lawrence*, the "sole and narrow question" was whether a First Step Act movant is categorically entitled to allocute before the district court rules on a section 404 motion for sentence reduction. *See id.* at 42, 46. Because the section 3553(a) factors were not necessary to the allocution holding, the directive is likely *dicta*.

amount, however, nonetheless qualifies for the baseline CCE offense, which has no minimum drug quantity threshold. *See* 21 U.S.C. § 848(a). That offense includes a twenty-year mandatory minimum. *Id.* Twenty years, then, is the correct mandatory minimum for a district judge to use in deciding whether to "impose a reduced sentence" for Palmer's CCE offense under the First Step Act. First Step Act § 404(b), 124 Stat. at 5222; *accord White*, 984 F.3d at 86 (using drug quantity in statute of conviction, rather than greater amount attributable to defendant's conspiracy, to determine mandatory minimum).

At the end of the key paragraph addressing the mandatory minima, the district court stated that "Palmer faces no disparity between the mandatory minimum he was sentenced under and the one he would have faced 'if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time.'" App. 147. But there should be a disparity; Palmer was sentenced under the Super CCE statute and received the mandatory life sentence that he is currently serving, rather than the twenty-year mandatory minimum he would have faced using the drug quantity in the statute of conviction, as mandated by *White*. It is therefore unclear if the district court correctly applied "the legal requirements governing review of motions for reduced sentences under section 404(b) of the First Step Act." *White*, 984 F.3d at 92.[4]

We recognize that the district court may have used the judge- or jury-found drug quantities attributable to Palmer's CCE to conclude that he exceeded the 8,400-gram threshold and therefore would have received a life sentence even under the higher threshold. *Cf. id.* at 88 ("The court may consider

---

[4]  As the government acknowledged at oral argument, "when a court is making a discretionary determination, it has to understand what it's choosing between." Tr. of Oral Arg. 35:5–35:7.

both judge-found and jury-found drug quantities as part of its exercise of discretion."). Indeed, it is possible that the district court implicitly recognized the twenty-year mandatory minimum by initially acknowledging earlier in the paragraph its discretion to lower Palmer's sentence from life without parole. But such an inference conflicts with the court's later statement that there is "no disparity" because the mandatory minimum is life. Given the anchoring effect of using the incorrect mandatory minimum sentence, *see id.* at 87, and the importance of mandatory minima to sentencing, *see Alleyne v. United States*, 570 U.S. 99, 112–13 (2013), we remand for the district court to clarify the "new [mandatory] minimum . . . penalt[y]," *White*, 984 F.3d at 90 (quoting *Hudson*, 967 F.3d at 609); *see also United States v. Graham*, 317 F.3d 262, 275 (D.C. Cir. 2003) (remanding when district court "may have applied" incorrect mandatory minimum); *United States v. McKeever*, 824 F.3d 1113, 1125 (D.C. Cir. 2016) (remanding for clarification because record was unclear and "law was in flux" and noting "we will not search for error when" remand "will better serve the ends of justice").[5]

As for the remainder of the district court's analysis, the district court properly acknowledged the remedial purpose of the Fair Sentencing Act and the First Step Act and explicitly

---

[5] Palmer also argues that the jury-found quantity of 1,500 grams is the only factual finding of a drug quantity in the case and that, in exercising its discretion, the district court should not have considered the "100 to 200 kilo[gram]s of crack" cocaine referenced by the original sentencing judge, App. 19, nor the 150 kilograms referenced in the Presentence Report. The district court was operating without the benefit of *White*'s instruction to consider jury- or judge-found facts, 984 F.3d at 88, and we will leave it to the district court to address in the first instance whether the quantities qualify as "judge-found" under *White*.

considered two of the section 3553(a) factors, App. 147–48, which are "especially important" in "complex[]" cases like this one, *see White*, 984 F.3d at 90–91. Although "there is no requirement that sentencing courts expressly list or discuss every Section 3553(a) factor," *United States v. Knight*, 824 F.3d 1105, 1110 (D.C. Cir. 2016), "express acknowledgment of" the relevant factors and "mitigation arguments is of course helpful and encouraged," *see United States v. Pyles*, 862 F.3d 82, 94 (D.C. Cir. 2017), especially if there is no record of a hearing on the First Step Act motion for relief.[6] Because the district court ruled without the benefit of *White* and because the "new statutory minimum" frames the district court's exercise of discretion, *cf. Molina-Martinez v. United States*, 578 U.S. 189, 198–99 (2016) (detailing anchoring effect Federal Sentencing Guidelines have on "district court's discretion" (citation omitted)), we do not opine on the adequacy of its consideration of "relevant factors" other than the "new statutory minimum,"[7] *White*, 984 F.3d at 90 (citation omitted).

---

[6] In *White*, we did not have the benefit of a hearing transcript and remanded in part because the district court order "fail[ed] to mention" relevant mitigation arguments and rehabilitation evidence. 984 F.3d at 93.

[7] Palmer argues that the district court did not adequately consider his post-sentencing rehabilitation evidence. As the district court acknowledged, App. 148, Palmer provided letters from family members and friends, *id.* at 37–39, 42, 56, 59, as well as unacknowledged evidence from prison officials and prison records detailing enrollment in a number of rehabilitative classes and programs*, see id.* 44–55, 57–58, 60–78, 111–15. On the other hand, Palmer's prison disciplinary record lists over twenty incidents leading to sanctions, including at least six violent incidents. *See id.* 117–18.

## B. SECTION 2255 ORDER

The district court concluded that it lacked jurisdiction of Palmer's section 2255 petition because it was a "second or successive motion" under 28 U.S.C. § 2255(h). App. 127–29. To so conclude, the district court relied on *Magwood v. Patterson*, in which the Supreme Court held that "the phrase 'second and successive' [in 28 U.S.C. § 2244(b)] must be interpreted with respect to the judgment challenged." 561 U.S. at 333. Palmer argues that his "second in time [section] 2255 motion is not an unauthorized successive motion because it is his first [section] 2255 motion challenging the amended judgment." Appellant Br. 28. The crux of the issue is whether "there is a 'new judgment intervening between the two [section 2255] petitions.'" *See Magwood*, 561 U.S. at 341 (quoting *Burton v. Stewart*, 549 U.S. 147, 156 (2007)). Because on remand the district court has the authority to grant Palmer's First Step Act motion and impose a new sentence with an accompanying new judgment, we will hold the section 2255 appeal in abeyance pending resolution of the First Step Act proceedings. *See Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008); *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936).

For the foregoing reasons, we reverse the district court's judgment, remand for further proceedings consistent with this opinion and hold the section 2255 appeal in abeyance.

*So ordered.*